# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 44064

| | |
|---|---|
| In the Interest of the DOE CHILDREN, Children Under the Age of Eighteen Years. | ) ) |
| ------------------------------------------------------- | ) |
| IDAHO DEPARTMENT OF HEALTH AND WELFARE, | ) ) ) |
| Petitioner-Respondent, and | ) ) |
| GUARDIAN AD LITEM / CASA, | ) ) |
| Intervenor-Respondent, v. | ) ) ) ) |
| JANE DOE (2016-11), | ) ) |
| Respondent-Appellant. | ) ) |

Boise, June 2016 Term

2016 Opinion No. 102

Filed: September 14, 2016

Stephen W. Kenyon, Clerk

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Bonneville County. Hon. Ralph L. Savage, Magistrate Judge.

The judgment of the magistrate court is <u>affirmed</u>. Costs on appeal are <u>awarded</u> to respondent.

Bonneville County Public Defender, Idaho Falls, attorneys for appellant.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, attorney for respondent.

_____

W. JONES, Justice

## I. NATURE OF THE CASE

In an expedited appeal out of Bonneville County, Jane Doe ("Mother") appeals a magistrate court's judgment terminating her parental rights as to her children, D.M., A.M., J.S., A.L., and R.L. She asserts that the State failed to produce clear and convincing evidence sufficient to overcome the presumption that she could parent her children. Specifically, Mother argues that: (1) the last eight months of her participation in the case plan contravene a finding of neglect; and (2) the Idaho Department of Health and Welfare ("IDHW") failed to help reunify the family.

1

## II. FACTUAL AND PROCEDURAL BACKGROUND

Mother has five children, D.M. (born 2007), A.M. (born 2008), J.S. (born 2013), A.L. (born 2014), and R.L. (born 2015).

On May 22, 2014, a petition under the Child Protective Act was filed, asking a magistrate court to determine whether the children were within the jurisdiction of the Child Protective Act, Idaho Code Title 16, Chapter 16, and whether the children were "abandoned; abused; neglected; homeless and/or lacking a stable home environment." Additionally, the petition asked the magistrate court to place the children under the protective supervision of the IDHW. The petition originated due to "ongoing neglect of the children" and also because A.L. was born with methamphetamine in her system. After an adjudicatory proceeding, the magistrate court held the following: (1) the children are within the jurisdiction of the Child Protection Act; (2) the children are placed under the protective supervision of the IDHW in the children's own home; and (3) Mother will cooperate with the IDHW in the development of a case plan.

On August 11, 2014, the magistrate court approved a case plan that required Mother to secure independent housing, attend parent-teacher conferences, and earn her GED. The magistrate court included a warning that "[Mother's] failure to comply with the plan could result in the filing of a petition to terminate parental rights."

The children were placed in shelter care on August 20, 2014, due to Mother's continued non-compliance and neglect, which included failure to follow the case plan, discharge from drug and alcohol treatment due to failure to attend, and home cleanliness and safety issues. A redisposition hearing occurred on August 22, 2014, which resulted in the magistrate court: (1) finding that it was in the best interest of the children to vest legal custody of the children to the IDHW; (2) finding that efforts to prevent removal were reasonable; and (3) granting an extended home visit subject to Mother's continued compliance and cooperation with the IDHW in the preparation of case plans.

After a hearing on September 15, 2014, the magistrate court approved an amended case plan requiring, *inter alia*, that Mother earn her GED and obtain independent housing. Once again, the magistrate court warned that "[Mother's] failure to comply with the plan could result in the filing of a petition to terminate parental rights." The previously granted extended home visit ended on September 10, 2014, due to Mother's continued neglect, failure to comply with the case plan, and failure to follow the rules at the Haven Shelter, where she temporarily resided.

Consequently, the children have remained in the IDHW's custody since August 20, 2014, and in a foster home since September 10, 2014.

In review hearings on February 9 and May 18, 2015, the magistrate court found that Mother's non-compliance with the case plan had persisted. The magistrate court cited the IDHW's reports in each of its orders. Prior to the second hearing, the IDHW reported as follows:

> [Mother] is currently incarcerated on felony drug charges. [She] was released to pre-trial services in which she did not follow the terms of that release and that was revoked. [She] also failed to attend her court hearings and there were warrants for her arrest. [She] has been involved in 3 different treatments since this case began and has been kicked out of all 3 for failure to comply. [She] has tested positive on numerous drug tests and failed to produce or show for many as well. [She] has not been employed since this case opened. [She] was moved into the Haven and given her children back to her. She failed to comply with any of the Haven rules and left the Haven. [She] continues to reside with her grandmother, even though she knows the children cannot return to this location. [She] struggles on her visitations with her children and often sits on her cell phone, even though asked to put it away, or argues with [father of A.L.] in the visitation. The visitations with her children are horrible and the children run out of the room and away from [her]. The visitation monitor attempts parent coaching and [Mother] flat out refuses to listen or comply.

The magistrate court again warned Mother that failure to comply with the case plan could result in the filing of a petition to terminate parental rights. Additionally, the magistrate court noted that the IDHW had continued to make reasonable efforts to reunify the children with their parents, but such efforts were unsuccessful.

Following a hearing on August 17, 2015, the magistrate court approved the permanency plan calling for termination of parental rights and adoption. The magistrate court did not suspend reunification efforts, but warned that if Mother did not demonstrate remarkable progress on her case plan and in drug court, the IDHW would be authorized to suspend further reunification efforts and visitation between Mother and her children. At the time of the permanency order, the children had been in the IDHW's custody for twelve months.

The IDHW petitioned to terminate the parental rights of Mother on August 21, 2015. The petition stemmed from Mother's "neglect of the children, [her] failure to comply with the case plan and court orders, [her] failure to progress in order to reunify with the children within 15 months, and [her] failure to discharge parental responsibilities." Shortly thereafter, Mother gave birth to her fifth child, R.L., who was immediately placed in shelter care for the same reasons listed in the termination petition. The magistrate court held a shelter care hearing regarding R.L.

3

on August 24 and August 31, 2015, during which the director of the Haven Shelter and the case manager testified. The magistrate court found that despite the IDHW's reasonable efforts, the circumstances necessitated placing R.L. in shelter care. The magistrate court warned Mother that she would need to make a "remarkable turnaround between now and the adjudicatory hearing" in order to have R.L. placed in her care at that time.

Mother's non-compliance with the case plan continued as she broke the Haven Shelter's rules, probation rules, and family drug court rules, which ultimately led to her arrest and incarceration on September 17, 2015. Following a hearing on September 28, 2015, the magistrate court issued an order authorizing the IDHW to suspend visitation and reunification efforts as to the four oldest children. Regarding the youngest child, R.L., the magistrate court found that, due to neglect and lack of a stable home environment, R.L. was within the jurisdiction of the Child Protective Act. Further, the magistrate court held that legal custody of R.L. was vested in the IDHW, but reunification efforts and visitation would continue. Accordingly, the magistrate court required the IDHW to prepare a written case plan for Mother.

On September 30, 2015, the IDHW amended its previous petition to terminate parental rights to add R.L. On October 19, 2015, the magistrate court held a case plan and permanency hearing pertaining to R.L. The magistrate court approved the case plan and required Mother to earn her GED and obtain independent stable housing. Regarding the permanency hearing, the magistrate court found that the IDHW made reasonable efforts to reunite R.L. with Mother, but due to Mother's non-compliance, the magistrate court concluded it was appropriate to place R.L. on the same track as his four siblings. The magistrate court provided the following reasons for its order: R.L.'s siblings have been in foster care for a significant portion of the last eighteen months during which Mother failed to comply with the case plan and court's orders; Mother was removed from family drug court and the Haven Shelter due to non-compliance; Mother was arrested and incarcerated on September 17, 2015, due to numerous probation violations, including associating with known felons and parolees who are actively using drugs, associating with [father of A.L.] through Facebook and letters, possessing hydrocodone pills without a prescription, sending sexual naked pictures of herself to known felons and parolees, failing to perform community service, failing to work on her GED as ordered by family drug court, continuing to sleep in her room during the day rather than seeking employment or performing other tasks, and engaging in criminal activity on her phone; Mother has demonstrated that she is

4

not likely to be in a position to parent R.L. for a significant period of his life; and Mother has not and will not be able to fulfill her obligation as a parent.

The termination hearing took place on January 8, 11, and 13, 2016. The magistrate court noted that "[t]he admission of 280 exhibits provided more than enough grounds for termination." Nonetheless, the IDHW offered testimony. The director of the Haven Shelter testified regarding Mother's instability and non-compliance during her time at the Haven Shelter. Mother's probation officer testified that Mother failed to comply with probation and drug court requirements, which led to the revocation of probation and incarceration of Mother. The risk assessor at the IDHW testified regarding Mother's neglect of the children and her failure to comply with the case plans. Ms. Hazekamp, the case manager at the IDHW, testified that it was in the best interests of the children to terminate Mother's parental rights so they could be adopted by the foster family with whom the children are "living, thriving, and bonded." Further, Ms. Hazekamp testified that Mother failed to comply with her case plan and to "even minimally progress in demonstrating a willingness or ability to discharge parental responsibilities." Finally, the guardian ad litem testified as follows: (1) the children were neglected prior to being placed in foster care; (2) termination of parental rights was in the best interests of the children; and (3) the children are thriving in their pre-adoptive placement and deserve permanency and stability. Additionally, the magistrate court noted that Mother acknowledged that "she was asking the court to trust that her future conduct would be much better than her past conduct. She also acknowledged she had put her relationship with men ahead of her children, and she conceded that her past conduct justified the termination of her parental rights."

On March 7, 2016, the magistrate court issued its Findings of Fact and Conclusions of Law. The resulting judgment, which terminated Mother's parental rights, was issued on March 10, 2016. The magistrate court's findings of facts expressed appreciation for Mother's intentions regarding her future, but ultimately held that her past clearly and convincingly justified termination. The magistrate court continued, citing Mother's numerous violations of the law, including drug use. Specifically, the magistrate court recounted the events surrounding A.L.'s birth:

> [A.L.] was born . . . positive for methamphetamine. [Mother] admitted to a hospital staff member that she had been using methamphetamine as recently as one week prior to the birth of [A.L.]. [Mother's] behaviors were "very bizarre"

5

while she was in the hospital, wherein she acted in a manner that led hospital personnel to believe she was currently under the influence of drugs.

The Findings of Fact and Conclusions of Law also mentioned the risk assessor's numerous concerns regarding the safety of the children. These concerns stemmed from Mother's drug use while pregnant, positive drug tests, housing and financial instability, failure to follow through with appointments, failure to engage in substance abuse treatment, failure to cooperate with the IDHW, failure to maintain a clean residence, and overall inability to parent. These concerns, as well as other concerns were expressed by the guardian ad litem. The Findings of Fact and Conclusions of Law noted that Mother's non-compliance worsened throughout the life of the child protection case, including her incarceration on felony drug charges.

In all, Mother failed to comply with four different case plans. Since the beginning of Mother's case, there were only two brief periods when she was in an approved residence: (1) seventeen days between August and September of 2014, at the Haven Shelter; and (2) less than three months between June and September of 2015, also at the Haven Shelter. The children were with Mother during her 2014 stay at the Haven Shelter. The director of the Haven Shelter reported that Mother left the room in worse condition than any other resident:

> We had to throw away all the mattresses due to urine and food messes. There were feces smeared in the bathroom on the toilet and in the sink and the toilet was plugged up with feces in it. I don't know if the kids had been playing in the toilet with cups or what. There were also feces in the main room on the floor under the bunk beds and other places. It now has new mattresses and the rooms [have] been scrubbed several times with bleach.

Mother's second stay at the Haven Shelter ended due to continued non-compliance.

Mother's issues with drugs persisted throughout the case. On December 9, 2013, Mother submitted to a substance abuse assessment. The assessment included reports of drug and alcohol dependence. After the assessment, Mother began counseling, but after only one month of sporadic attendance, she was discharged for non-compliance, failing to participate, and failure to attend. In a December 2014 report, a CPS liaison noted that Mother was discharged from her second treatment facility due to non-compliance. In a third attempt to receive treatment for substance abuse, Mother was referred to Club, Inc. The initial assessment at Club, Inc. included the following observations: Mother has tested positive for methamphetamine on multiple occasions over the course of the case; Mother has repeatedly refused to submit to urine analyses which indicates that Mother is misrepresenting her use of substances; and Mother reported heavy

6

use of methamphetamine in 2013. After five weeks of attempted treatment with Club, Inc., Mother was discharged for non-attendance.

The magistrate court noted that Mother acknowledged her struggle with drug use since the beginning of this case, but "she overemphasized her several clean drug tests during her brief involvement with family drug court from June 24, 2015, to September 18, 2015." The magistrate court further concluded:

> [Mother] claimed she has been drug free for eight months, but she was incarcerated from May 4, 2015, to June 24, 2015, and from September 18, 2015, to the present [March 7, 2016]. It is expected that a defendant will not be using drugs while incarcerated or while in family drug court. The evidence is clear that [Mother] was using drugs fairly constantly while not incarcerated and while not in family drug court, even while pregnant with A.L. and R.L.

In her brief, Mother emphasized the encouraging comments she received while attending meetings at family drug court. However, the magistrate court found that mere proof of attendance was insufficient to demonstrate internalization, and the encouragement from the family drug court team only demonstrated the team's efforts to help her succeed. Additionally, Mother blamed others to minimize her non-compliance. She argued, without supporting evidence, that the case manager's permanency report, dated August 10, 2015, misled the judge. In response, the magistrate court acknowledged that Mother demonstrated brief involvement in family drug court, but failed to comply with "virtually all of the case plan tasks, and she even admitted to using methamphetamine during the first half of her pregnancy with [R.L.]." The magistrate court found that the case manager was not inaccurate in anticipating that [R.L.] would be "born drug addicted" given that Mother was using methamphetamine until her May 4, 2015 arrest. Mother also argued to the magistrate court (and to this Court) that she was removed from family drug court because of the case manager's report. However, the magistrate court found that the evidence demonstrated that she was removed from family drug court due to "non-compliance with probation rules, family drug court rules, the Haven Shelter rules, as well as the case plan requirements" and that her attendance at meetings and avoidance of drug use during a brief period of close monitoring was not enough to demonstrate a "remarkable turnaround." The magistrate court highlighted the following:

> [Mother] did not identify any services the Department could have offered that they did not offer. [Mother] failed to identify any case-plan task or court-ordered task she complied with. [Mother] failed to identify anything she did correctly through the two years of the child protection case other than the partial and brief

7

clean drug tests and meeting attendance during three months of family drug court, from which she ultimately failed.

Mother also indicated that her addiction disorder was the sole reason the IDHW sought to terminate her parental rights. In response the magistrate court stated:

> [Mother's] drug use certainly played a role in her pattern of misconduct, but [Mother] neglected the children in numerous other ways, not just through drug abuse. For example, she failed to have stable housing, she failed to have employment, she failed to have stable relationships, she committed crimes repeatedly, she failed to comply with probation requirements, she failed to comply with the case plan requirements, she failed to comply with child protection court orders, and she clearly failed to discharge parental responsibilities. The court cannot disregard [Mother's] numerous areas of non-compliance. She has had nearly two years to demonstrate whether she was truly interested in discharging parental responsibilities. Attendance at meetings for three months while in the controlled environment of family drug court did not compensate for the lengthy history of poor decisions.

In addition to reviewing Mother's non-compliance with the case plans, the magistrate court reviewed her criminal history, noting that it demonstrated an "unwillingness or inability to discharge parental responsibilities." Her criminal history, in pertinent part, is as follows:

On July 6, 2013, Mother was arrested for possession of drug paraphernalia. Twelve small baggies (which field tested positive for amphetamine compounds), two glass pipes with burnt residue, and three needles were found in her purse. She was found guilty and sentenced to supervised probation.

On January 6, 2014, Mother was found guilty of probation violation for use of a controlled substance. She was required to serve ninety days in jail, but was released early to give birth to A.L.

On March 16, 2015, Mother was arrested for possession of methamphetamine and drug paraphernalia. Two syringes containing methamphetamine, a rubber strap used to tie off an arm for starting IVs, and thirty-eight unused syringes were found in her purse. Mother was released to the pre-trial release program on March 23, 2015. On May 4, 2015, Mother was arrested on a bench warrant after failing to appear for pretrial conference, testing positive for amphetamines, and failing to report for drug testing. She spent over seven weeks in jail before being released to the pre-trial release program on June 24, 2015, when she began family drug court.

8

On July 23, 2015, Mother was found guilty of the charges stemming from her March 16, 2015 arrest. As a result, she was sentenced to five years in prison; however, the sentence was suspended, and Mother was placed on probation for four years.

On August 4, 2015, Mother was arrested and incarcerated for two days as a sanction for violating family drug court rules. On September 17, 2015, Mother was arrested and incarcerated pending the adjudication of her prior probation violations. She remained in jail until November 17, 2015, when the court revoked her probation, imposed her original five year prison term, and ordered her participation in a rider program. At the date of the magistrate court's Findings of Fact and Conclusions of Law, Mother was incarcerated on her rider with an uncertain date of release.

The aforementioned Findings of Fact and Conclusions of Law was issued on March 7, 2016. The resulting judgment, which terminated Mother's parental rights as to her five children, was issued on March 10, 2016. First, the magistrate court concluded that, pursuant to Idaho Code section 16-2005(1)(b), it was able to terminate Mother's parental rights because "termination . . . is in the best interests of the child[ren] and [there is] one (1) or more [statutorily defined] conditions [that] exist." Specifically, the magistrate court found the termination was appropriate on three statutory grounds: (1) neglect, per Idaho Code section 16-2002(3)(b); (2) inability to discharge parental responsibilities, per Idaho Code section 16-2005(1)(d); and (3) multiple incarcerations, per Idaho Code 16-2005(1)(e). In support of its conclusion, the magistrate court stated as follows:

> The facts have clearly and convincingly demonstrate[d] that [Mother] neglected her children, due to her failure to properly care for the children prior to their placement in the custody of the [IDHW], her failure to comply with the case plans, her failure to comply with court orders, her failure to comply with probation requirements, her failure to comply with family drug court requirements, her failure to reunify with the four older children within 15 months, her failure to demonstrate the ability or willingness to discharge parental responsibilities, and her history of incarcerations.

Mother appeals the decision.

### III. ISSUES ON APPEAL

1. Whether the magistrate court's finding that Mother is unable to discharge parental responsibilities is supported by substantial, competent evidence.

2. Whether the magistrate court's finding that termination is in the best interests of the children is supported by substantial, competent evidence.

9

**3.** Whether the magistrate court's finding that the IDHW made reasonable efforts to reunite Mother and her children is supported by substantial, competent evidence.

## IV. STANDARD OF REVIEW

A termination of parental rights is reviewed as follows:

> Grounds for termination of parental rights must be shown by clear and convincing evidence because each parent has a fundamental liberty interest in maintaining a relationship with his or her child. Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. On appeal, this Court will not disturb the magistrate court's decision to terminate parental rights if there is substantial, competent evidence in the record to support the decision. Substantial, competent evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. This Court is required to conduct an independent review of the magistrate court record, but must draw all reasonable inferences in favor of the magistrate court's judgment because the magistrate court has the opportunity to observe witnesses' demeanor, to assess their credibility, to detect prejudice or motive[,] and to judge the character of the parties.

*Idaho Dep't of Health and Welfare v. Doe (2015-01)*, 158 Idaho 764, 767, 351 P.3d 1222, 1225 (2015) (internal citations omitted).

## V. ANALYSIS

Pursuant to Idaho Code section 16-2005(1), a court may terminate parental rights when:

> [I]t finds that termination of parental rights is in the best interests of the child and that one (1) or more of the following conditions exist:
>
> . . . .
>
> (d) The parent is unable to discharge parental responsibilities and such inability will continue for a prolonged indeterminate period and will be injurious to the health, morals or well-being of the child.

Idaho Code § 16-2005(1).

**A.** **There is substantial, competent evidence supporting the magistrate court's termination of Mother's parental rights on the basis of inability to discharge parental responsibilities.**

Mother contends that despite her addiction to methamphetamine and her criminal convictions, her recent compliance with the case plan preludes a termination of her parental rights on the bases of neglect, inability to discharge parental responsibilities, and incarceration. In support of her argument, she offers the following facts: (1) "[she has] always maintained visitation and contact with the children"; (2) "she has aggressively pursued sobriety for more than eight months"; (3) "while on probation since July, 2015 [she] remained clean and sober as

10

confirmed by testing of her urine"; (4) "[n]o evidence was presented to show that she had used illegal drugs or abused substances [since July, 2015] through the trial in January, 2016"; (5) she attended various meetings and programming; (6) "[she] made substantial progress on her GED while at the Haven"; and (7) "[she] found a job at the Guest House Inn in Idaho Falls." Mother argues that these facts demonstrate "substantial compliance to the case plan and a willingness and ability to carry out parental duties . . . [and] contravene a finding of abandonment or neglect."

The IDHW responds that the magistrate court's termination of Mother's parental rights is supported by substantial, competent evidence. Specifically:

> She demonstrated [an inability to discharge parental responsibilities] repeatedly through her commission of crimes, her instability in housing, her probation violations, her failure to obtain employment, her failure to refrain from inappropriate associations, her failure to comply with any of the case plan tasks, her repeated failure to follow through with drug treatment, and her repeated incarcerations.

We hold that the magistrate court's finding that Mother is unable to discharge parental responsibilities and such inability will continue for a prolonged indeterminate period and will be injurious to the health, morals or well-being of the children is supported by substantial, competent evidence. Throughout the case, Mother demonstrated an inability to discharge basic parental responsibilities. Mother failed to secure court approved housing, complete drug treatment, make progress on her GED, or secure stable employment. Mother struggled with drug use throughout the case and even admitted that she is addicted to methamphetamine and used it while pregnant with A.L. Mother failed to abide by the law, which resulted in felony drug charges.

We further conclude that Mother grossly misrepresented the facts in arguing that her recent compliance should preclude the termination of her parental rights. For instance, her claim that she "found a job" may be true on its face, but fails to disclose that her employment lasted a mere one day—nowhere near the stable employment required by the case plan. Further, Mother's claim that she "made substantial progress on her GED while at Haven" is clearly misleading; first, because she failed to make any sort of progress until after the termination hearing, and second because her alleged "substantial progress" amounts to the completion of two practice tests, and only partial completion of one actual test, which she failed. Mother's claim that she

11

always maintained visitation and contact with her children is accurate; however, she fails to address the numerous concerns raised by the visitation supervisor, such as:

> [she] struggles on her visitations with her children and often sits on her cell phone, even though asked to put it away, or argues with [father of A.L.] . . . . The visitations with her children are horrible and the children run out of the room and away from [her].

Finally, Mother's claim that she has remained clean and sober since July 2015 ignores the context of her abstinence. As stated by the magistrate court: "It is expected that a defendant will not be using drugs while incarcerated or while in family drug court." Overall, Mother's slight progress does not obviate termination. *State, Dep't of Health & Welfare v. Doe*, 145 Idaho 662, 665, 182 P.3d 1196, 1199 (2008) (holding that, despite the conflicting evidence, the finding of neglect was supported by substantial and competent evidence.).

The magistrate court acknowledged Mother's intentions to improve her conduct, stating: "Although the court appreciates [Mother's] stated intentions regarding her future, a parent's neglect of her children as well as her overall past misconduct are the primary grounds for this court to consider when determining whether to terminate parental rights. [Mother's] past clearly and convincingly justifies termination." We also appreciate Mother's intentions; however, considering the evidence discussed above, and the evidence identified in the magistrate court's Findings of Fact and Conclusions of Law, we hold that substantial, competent evidence supports the conclusion that Mother is unable to discharge parental responsibilities and such inability will continue for a prolonged indeterminate period and will be injurious to the health, morals or well-being of the children.[1]

**B.    The magistrate court's finding that termination is in the best interests of the children is supported by substantial, competent evidence.**

Mother's brief states that termination is only appropriate if it is in the best interests of the children; however, her brief fails to argue that the termination of her parental rights was not in the best interest of her children.

The IDHW responds that the magistrate court's finding that termination is in the best interest of the children is supported by substantial, competent evidence. Specifically, the IDHW

---

[1] "Statutory grounds for termination of parental rights are independent, and if any one or more of the grounds for termination are found, termination may be granted." *Roe v. Doe*, 142 Idaho 174, 179, 125 P.3d 530, 535 (2005) (citing *Matter of Aragon*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991)). Because this Court affirms the finding that Mother is unable to discharge parental responsibilities and such inability will continue for a prolonged indeterminate period and will be injurious to the health, morals or well-being of the children, it is unnecessary to consider the other bases found by the magistrate court.

argues that it is in the best interest of the children to be provided the permanency and stability that stems from the termination of Mother's parental rights; Mother cannot provide her children with a permanent, safe, and stable environment, nor can she provide adequate food, shelter, and clothing; and Mother's history demonstrates that it is unlikely that she would be able to provide care, and a safe and stable home environment for the children in the near future. Additionally, the IDHW notes that the case manager and the guardian ad litem testified that termination of Mother's parental rights would be in the best interest of the children because the children are residing together in a pre-adoptive placement; the children have bonded to each other and to the foster family; the children have progressed while in foster care; and the children are thriving and looking forward to the stability and permanency that will result from adoption. Lastly, the IDHW notes that Mother acknowledged that the foster parents are "amazing people" and love her children "so much." Furthermore, Mother stated: "[she is] thankful, if [her] rights are terminated, [her] kids are going to be with [the foster family]. And with that [she will] be able to sleep, knowing that they're safe with some people that love them." Lastly, Mother agreed that the children deserve to be raised in a stable family together as siblings.

"Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. When considering the best interests of the child, a trial court may consider numerous factors." *In re Doe (2015-03)*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015) (quoting *In re Doe (2014-15)*, 157 Idaho 765, 772, 339 P.3d 1169, 1176 (2014)); I.C. § 16-2005(1)). While a comprehensive list of factors a court must consider does not exist, this Court has considered the following: "the stability and permanency of the home, unemployment of the parent, . . . improvement of child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law." *In re Doe (2014-15)*, 157 Idaho at 772, 339 P.3d at 1176 (quoting *In re Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014)). Additionally, this Court has considered the testimony from IDHW social workers, and guardians ad litem. *Doe*, 145 Idaho at 665, 182 P.3d 1199.

We hold that substantial, competent evidence supports the magistrate court's finding that termination is in the best interest of the children. There is evidence that the children have improved significantly while in foster care. Before IDHW became involved, the two oldest children had poor school attendance. Since IDHW's involvement, they have made substantial

academic progress. For example, D.M., who had previously been held back a grade, has caught up to the appropriate grade level. There is also evidence that the three younger children have improved and bonded strongly with their pre-adoptive family. Ms. Hazekamp testified that "[t]hey associate Mom and Dad with their foster parents. That's who they go to for comfort. That's who they seek out. That's - - that is their home." She further testified that J.S. has made significant improvement with his aggressive behavior since entering foster care. A.L., who was suffering from typical symptoms of a child born on methamphetamine, has been involved with and is "doing amazing" in Infant Toddler Services, occupational therapy, and speech therapy. In sum, Ms. Hazekamp testified that the children are "doing fantastic" with their pre-adoptive family.

Conversely, there is no indication that Mother has taken significant steps to establish a stable home for her children. First, Mother has failed to secure independent, court-approved housing. Second, aside from her one day of work at the Guest House Inn, Mother has failed to secure employment. Third, Mother's non-compliance with four case plans has demonstrated, at best, a weak effort to improve her situation. Fourth, Mother continues to have problems with the law as demonstrated by her criminal history and incarcerations. In sum, substantial competent evidence supports the magistrate court's conclusion that termination of Mother's parental rights is in the best interests of the children.

## C. The magistrate court's finding that the IDHW made reasonable efforts to reunify Mother and the children is supported by substantial, competent evidence.

At the outset, it is important to note that Mother does not claim that a finding of reasonable reunification efforts is relevant to this Court's analysis of the termination of parental rights. This comes as no surprise because such a claim would be without statutory support. While a finding of reasonable reunification efforts is required throughout the child protective action under the Child Protective Act, Idaho Code title 16, chapter 16, it is not required to terminate parental rights. *See* I.C. § 16-2005. Nevertheless, we will address Mother's arguments.

Mother's brief identifies the following issue: "IDHW not only failed to help reunify this family they seriously contributed to [Mother's] expulsion from Family Drug Court and subsequent felony probation violation and imposition of retained jurisdiction." Presumably, this was intended to assert that the magistrate court's finding that the IDHW made reasonable efforts to reunify Mother and the children was not supported by substantial, competent evidence. Further, Mother argues that Ms. Hazekamp's reports were "less than completely forthcoming"

14

with the magistrate court and resulted in a violation of due process. Specifically, Mother argues that Ms. Hazekamp's testimony that "the child [Mother] was then carrying was going to be born with meth" was less than forthcoming because Ms. Hazekamp knew that Mother had provided clean urine analyses for more than six weeks. Mother also argues that Ms. Hazekamp's testimony from August 10, 2015, stating that Mother "showed very little motivation to change up to this point" was contradicted by the following comments from Ms. Hazekamp: (1) she was "hearing good things . . . just keep doing what your [sic] doing"; (2) Mother had "done a lot better to inform" the team; and (3) Mother was "'doing well' even though she had a lot 'going on.'" In sum, Mother argues that Ms. Hazekamp's "biased opinion . . . caused the Magistrate to authorize going forth with termination."

In response, the IDHW first notes that Mother did not object to Ms. Hazekamp's report to the magistrate court, nor did she challenge the order. Accordingly, the IDHW argues that the issue is moot. Nonetheless, the IDHW contends that Mother's argument ignores the poor choices she made, which justified Ms. Hazekamp's testimony. For support, the IDHW notes that it was appropriate for Ms. Hazekamp to anticipate that the child Mother was then carrying, R.L., was going to be born drug addicted, considering that Mother was using methamphetamine until her arrest on May 4, 2015. The IDHW also highlights that Ms. Hazekamp's testimony regarding Mother's lack of motivation to change was supported by the following evidence: non-compliance with the Haven Shelter's rules; wrongful associations; and non-compliance with the tasks of the case plan. In conclusion, the IDHW argues that the magistrate court considered the totality of the circumstances in terminating Mother's parental rights, and that a "brief period of partial compliance while in the controlled environment of family drug court cannot compensate for the lengthy history of non-compliance both before and after her unsuccessful involvement [in] family drug court."

The Child Protective Act, in pertinent part, provides as follows: "the state of Idaho shall, to the fullest extent possible, seek to preserve, protect, enhance and reunite the family relationship." I.C. § 16-1601. In outlining the IDHW's duty to prepare a case plan, Idaho Code section 16-1621(3)(c) requires that a case plan shall:

> Include a goal of reunification and a plan for achieving that goal. The reunification plan shall identify all issues that need to be addressed before the child can safely be returned home without department supervision. The court may specifically identify issues to be addressed by the plan. The reunification plan

shall specifically identify the tasks to be completed by the department, each parent or others to address each issue, including services to be made available by the department to the parents and in which the parents are required to participate, and deadlines for completion of each task. The case plan shall state with specificity the role of the department toward each parent. When appropriate, the reunification plan should identify terms for visitation, supervision of visitation and child support.

Idaho Code § 16-1621(3)(c). In *In re Doe (2015-21)*, a mother argued, *inter alia*, that the IDHW failed to make reasonable efforts to reunite her with her child. 160 Idaho 154, 162, 369 P.3d 932, 940 (2016). Specifically, the mother argued that the IDHW obstructed her case plan by failing to arrange inpatient treatment for the mother while she was in custody. *Id.* This Court held that the IDHW made reasonable efforts to reunify the mother with her child by assisting her in obtaining an initial assessment regarding her alcohol dependency. *Id.* Further, this Court noted that the mother's intervening conduct leading to incarceration could not be construed as a failure on the IDHW's part to make reasonable efforts to reunify the mother with her child. *Id.*

We hold that the magistrate court did not err by finding that the IDHW made reasonable efforts to reunify Mother with her children. The IDHW complied with Idaho Code section 16-1621(3)(c) by developing four case plans, which identified issues needing attention, set forth tasks for Mother and the IDHW, and stated with specificity the role of the IDHW. Further, the IDHW provided Mother with a variety of resources and support to allow her to comply with the case plans such as: three alcohol and drug treatment programs; two opportunities to live at the Haven Shelter; numerous parenting counseling programs; and many opportunities to progress towards a GED. As this Court held in *In re Doe (2015-21)*, Mother's intervening non-compliance does not amount to a failure on the part of the IDHW. 160 Idaho at 162, 369 P.3d at 940. Similarly here, Mother's non-compliance with the case plans and Ms. Hazekamp's subsequent report to the magistrate court do not negate the IDHW's reasonable efforts to reunify Mother with her children.

Regarding Mother's due process argument:

This Court has recognized that parents have due process rights in proceedings to terminate their parental rights. *In Interest of Bush*, 113 Idaho 873, 875, 749 P.2d 492, 494 (1988). However, Jane Doe has presented no legal argument supporting her contention that the termination of IDHW's duty to use reasonable efforts in reunifying her with the children violated her due process rights. Even in an appeal from the termination of parental rights, "we will not consider an issue which is not supported by cogent argument and authority." *Idaho Dep't of Health & Welfare v. Doe*, 151 Idaho 498, 503 n. 1, 260 P.3d 1169, 1174 n. 1

16

(2011) (citing *Liponis v. Bach*, 149 Idaho 372, 374, 234 P.3d 696, 698 (2010); I.A.R. 35(a)(6)).

*In re Doe (2013-15)*, 156 Idaho 103, 109, 320 P.3d 1262, 1268 (2014). Here, Mother failed to support her due process violation claim with authority or cogent argument. Accordingly, we will not consider the issue.

## VI. CONCLUSION

The magistrate court's judgment terminating Mother's parental rights on the basis of inability to discharge parental responsibilities is affirmed. The magistrate court's finding that the termination of Mother's parental rights is in the best interests of the children is affirmed. The magistrate court's finding that the IDHW made reasonable efforts to reunify Mother with her children is affirmed. Costs awarded to Respondents.

Chief Justice J. JONES and Justices EISMANN, BURDICK and HORTON concur.