# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 45180

| | | |
|---|---|---|
| **In the Matter of: JANE DOE II,** | ) | |
| **A Child Under Eighteen (18) Years of Age.** | ) | |
| ------------------------------------------------------- | ) | |
| **JOHN DOE I and JANE DOE I,** | ) | |
| | ) | |
| | ) | **Boise, October 2017 Term** |
| **Petitioners-Respondents,** | ) | |
| | ) | **2017 Opinion No. 124** |
| | ) | |
| **v.** | ) | **Filed: December 8, 2017** |
| | ) | |
| | ) | **Karel A. Lehrman, Clerk** |
| **JOHN DOE and JANE DOE (2017-19),** | ) | |
| | ) | |
| | ) | |
| **Respondents-Appellants.** | ) | |
| | ) | |

Appeal from the Magistrate Court of the Third Judicial District of the State of Idaho, Canyon County. Hon. A. Lynne Krogh, Magistrate Judge.

The magistrate court's final judgment is <u>affirmed</u>.

Krista L. Howard, Interim Chief Public Defender, Caldwell, for appellants.

Danielle C. Scarlett, Nampa, for respondents.

_____

## SUBMITTED ON THE BRIEFS

JONES, Justice.

## I. NATURE OF THE CASE

In an expedited appeal out of Canyon County, Jane Doe and John Doe (2017-19) ("Mother," "Father," and collectively, "Parents") appeal a magistrate court's Final Judgment terminating their parental rights to Jane Doe II ("Child"). Jane Doe I and John Doe I

1

("Grandmother," "Grandfather," and collectively, "Grandparents") initiated the underlying action by filing a Petition for Termination of Parental Rights and a Petition for Adoption. The magistrate court issued a Final Judgment terminating Parents' parental rights after concluding that Parents had abandoned Child and that the termination of Parents' parental rights was in Child's best interest. On appeal, Parents challenge the magistrate court's conclusion that Child was abandoned and that termination of parental rights was in Child's best interest.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Mother and Father were married in October 2006 and have six children together ranging in age from three to thirteen ("Children," and when not including Child, "Siblings"). Child was born in 2006 and is the second oldest of the Children.

Before the guardianship of Child became an issue, Grandparents and Parents were on good terms. Parents had financial difficulties, but Grandparents were their safety net. Parents and Children lived with Grandparents off and on from about the time Child was one year old. At times, Mother and Children would live with Grandparents without Father because Father was incarcerated.

During the 2012–2013 school year, Child lived with Parents and attended first grade, but she did not do well in school. Father testified that Child's poor performance was likely due to her being easily distracted and having to live in the very tight quarters of a 32-foot motor home. Grandparents testified that Child performed poorly because she missed many school days due to the instability of Parents' home life. Grandparents offered, and Parents agreed, to allow Child to live with Grandparents and repeat the first grade at a different school. Child began living with Grandparents on July 4, 2013. Between July 2013 and August 2014, Child lived with Grandparents during weekdays and with Parents during weekends.

On August 8, 2014, Child was staying with Parents for the weekend, but called Grandmother and asked to be picked up. Grandmother testified that, during bath time that evening, she observed that Child had fingerprint-like marks on her bottom and red marks on her face. Child explained that Father had hit her so hard that she thought her head "was going to pop off." Grandmother testified that they did not call the police at that time because they believed that the matter could be resolved within the family.

Days later, Father called the Sheriff's office because Grandparents had not returned Child. Father did not press kidnapping or custodial interference charges because he believed that

2

Child would be returned to Parents within a few days. However, instead of returning Child to Parents, Grandmother applied for a domestic violence protection order on behalf of Child against Father. Around October 6, 2014, the protection order was granted. The protection order prohibited Father from contacting Child for one year.

Grandparents filed for guardianship of Child on August 19, 2014. On March 3, 2015, an order was issued appointing Grandparents as temporary guardians of Child. Days after the entry of the temporary guardianship order, Grandmother contacted an agency that provided supervised and monitored parent/child visitations to arrange supervised visits between Child and Siblings.

Eight visits occurred between April 2015 and July 2015, which were documented by an agency employee ("Supervisor"). It had been eight months since Child had seen Siblings. Supervisor's summary report of the eight visits concluded with the following notes. The visits were very difficult because Parents and Grandparents did not work well together. Grandparents terminated the visits after the eighth visit. Supervisor attempted to negotiate a better schedule for future visits, but Grandparents said that they would work with a different agency. Supervisor called Mother to inform her that Grandparents refused to continue visits with the agency. Mother wept and begged Supervisor to continue to arrange visits with Grandparents. Supervisor tried several times to work with Grandparents, but they refused all visitation requests.

Parents' attempts to contact Child have been unsuccessful. As of May 26, 2017 (when the magistrate court issued its Findings of Fact, Conclusions of Law, and Order), there had been no contact between Child and Parents or Siblings since July 2015. Parents have not provided support for Child during Grandparents' guardianship. Father testified that despite earning between $1,200 and $1,600 per month, they did not support Child financially in any way. Specifically, Father testified as follows:

Q: So after October 2015 [the expiration of the protection order], what did you do to financially support [Child]?

A: There wasn't anything that I did.

Q: Hmm?

A: I didn't do anything.

Q: You didn't do anything to financially –

A: No, I did not.

Q: – support her?

3

A: No.

Q: You were working; weren't you?

A: I was.

Q: And bringing in a minimum of six – well, [you] at least made between 12 and $1600 a month?

A: Correct.

Q: And you never offered up anything?

A: I have not - - I have not had any contact with [Grandparents] since this whole proceeding[] took effect last year. Or excuse me, in 2014.

Q: Okay. Have you sent [Child] letters?

A: No.

Q: Have you personally tried to call [Child]?

A: No, I have not.

Grandparents testified that, after the supervised visitations terminated, they sent several letters to Mother offering visits for Siblings and Child, but the letters were returned as undeliverable. Specifically, on September 1, 2015, Grandparents sent a letter to Parents' RV park address, by certified mail, in which they proposed a visit between Child and Siblings. The letter was returned as undeliverable. Parents had lived at the RV park address for three years prior, but moved in August 2015 into a rented house shared with another couple ("Mr. Housemate," "Mrs. Housemate," and, collectively, "Housemates"), who had two children. It is unclear from the record whether Parents informed Grandparents of their new address, but Grandparents' verified petition listed the RV park address as Parents' last known address.

On October 18, 2016, Grandparents filed a Petition for Termination of Parental Rights and a Petition for Adoption. On April 13, 2017, a guardian *ad litem* was appointed. On April 28, 2017, the guardian *ad litem* filed a report, wherein she concluded that: (1) Parents failed to maintain a normal parent-child relationship with Child, without just cause, for the six months leading up to the petition to terminate; and (2) if Parents' parental rights were terminated, Grandparents would be excellent candidates to adopt Child. However, the guardian *ad litem*'s conclusion was not without reservation: She expressed concern over whether Mother's failure to maintain a normal parent-child relationship was without just cause. Specifically, the guardian *ad litem* was concerned by Mother's claim that she had attempted to call Grandparents to arrange visits with Child, but gave up because she never received a return call. The guardian *ad litem*

4

reasoned that if Mother's attempts to contact Child by calling Grandparents were corroborated by phone records, it would be cause for concern because Grandparents had denied knowledge of said calls. Further, if Mother's attempts were corroborated, "conceivably, [Mother] could make the argument that [Grandparents] unreasonably interfered in her efforts to have a normal parent child relationship with [Child]."

On May 1 and 3, 2017, the magistrate court held a termination hearing. There was considerable testimony regarding Mother's attempts to contact Grandparents by phone. As previously mentioned, Mother told the guardian *ad litem* that she attempted to call Grandparents and that she had phone records to prove it. Grandparents sought the phone records through formal discovery, but Parents did not respond. Parents produced the phone records after Grandparents filed a motion to compel. Testimony explaining the phone records indicated that Mother called Grandparents a total of ten times between December 2015 and August 2016: seven times on December 23 and 24, 2015; once on January 20, 2016; once on February 28, 2016; and once on August 17, 2016. Mother testified that she had left a message each time, but never received a return call. Parents testified that all of the phone calls were made with Housemates' phones. They used Housemates' phones instead of Father's phone because Grandparents were familiar with the number and more likely to answer a call from Housemates' phone number than Father's phone number. Mother testified that she sent numerous text messages to Grandparents, but never received a reply. There were no records of the text messages. Grandfather testified that neither he, nor Grandmother received phone calls or messages from Parents. However, Grandfather explained that they do not pick up calls from numbers that they do not recognize, and they delete voicemails from numbers that they do not recognize without listening to them. He testified that he has met Mrs. Housemate once, but did not know her phone number.

On May 26, 2017, the magistrate court issued a Findings of Fact, Conclusions of Law, and Order. After an exhaustive review of the facts, the magistrate court concluded that Parents had abandoned Child by failing to reasonably support Child and by failing to maintain regular personal contact for a period in excess of one year. Regarding Parents' failure to provide support for Child for almost three years, the magistrate court held that Parents' limited financial means did not change the fact that they were responsible for Child's support. Further, the magistrate court found that Parents had the means to support Siblings and to allow Father to maintain a relationship with one of his children from a different relationship who lived in California, which

involved regular road trips and stays in a motel; therefore, "presumably [Parents] had the resources to provide something for [Child]." The magistrate court summed up its holding, stating "The fact of the matter is, [Parents] did not even try. The bottom line is that [Parents] knew that [Grandparents] were and would continue to provide for [Child's] needs, and therefore chose to leave it to [Grandparents] to do so."

Regarding its holding that Parents willfully failed to maintain regular personal contact with Child for more than one year, the magistrate court concluded that Father was primarily responsible for his lack of contact with Child for more than two years and that it was not Grandparents' doing, as Father asserted. Addressing Parents' attempts to contact Grandparents or Child by phone, the magistrate court noted that there were credibility issues with the testimony of Parents and Grandfather, but ultimately concluded that "[a] handful of attempted phone calls over a period of almost two years is not the maintenance of a normal parental relationship, or even a significant effort toward maintaining a normal parental relationship."

Lastly, the magistrate court concluded that the termination of Parents' parental rights was in Child's best interest because: (1) Grandparents had been the sole providers for Child for almost three years; (2) Grandparents have provided the parental relationship and financial support necessary for Child's well-being; (3) Child looks to Grandparents for her sense of safety and security; (4) Child came to Grandparents bruised, frightened, and educationally delayed and now is academically current and has the feeling of safety and stability; and (5) Grandparents have demonstrated that they can be counted on by Child, and Parents have consistently demonstrated that they cannot be counted on by Child.

A procedural issue arose with regard to the magistrate court's Final Judgment. On June 22, 2017, the magistrate court issued a Judgment and Decree Terminating the Parental Rights of the Natural Parents. On June 27, 2017, Parents filed a Notice of Appeal. On June 29, 2017, this Court issued an Order Conditionally Dismissing Appeal after finding that the June 22, 2017 Judgment and Decree Terminating the Parental Rights of the Natural Parents was not accompanied by a Rule 54(b) certificate. On July 10, 2017, the magistrate court issued Final Judgment Re: Termination of Parent/Child Relationship. On July 11, 2017, Parents filed an Amended Notice of Appeal, and on July 13, 2017, this Court issued an Order to Withdraw Conditional Dismissal and Reinstate Appeal.

### III. ISSUES ON APPEAL

1.  Did the magistrate court err when it concluded that Parents abandoned Child pursuant to Idaho Code section 16-2005?

2.  Did the magistrate court err when it concluded that termination of Parents' parental rights was in Child's best interest?

3.  Are Grandparents entitled to attorney fees on appeal?

## IV. STANDARD OF REVIEW

[T]ermination of parental rights is reviewed as follows:

> Grounds for termination of parental rights must be shown by clear and convincing evidence because each parent has a fundamental liberty interest in maintaining a relationship with his or her child. Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. On appeal, this Court will not disturb the magistrate court's decision to terminate parental rights if there is substantial, competent evidence in the record to support the decision. Substantial, competent evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. This Court is required to conduct an independent review of the magistrate court record, but must draw all reasonable inferences in favor of the magistrate court's judgment because the magistrate court has the opportunity to observe witnesses' demeanor, to assess their credibility, to detect prejudice or motive[,] and to judge the character of the parties.

*Idaho Dep't of Health and Welfare v. Doe (2016-11)*, 160 Idaho 824, 831, 379 P.3d 1094, 1101 (2016) (quoting *Idaho Dep't of Health and Welfare v. Doe (2015-01)*, 158 Idaho 764, 767, 351 P.3d 1222, 1225 (2015)).

## V. ANALYSIS

**A.  The magistrate court did not err when it concluded that Parents abandoned Child pursuant to Idaho Code section 16-2005 because substantial, competent evidence supports the conclusion.**

Parents argue that the magistrate court erred when it concluded that Child was abandoned. Specifically, Parents challenge two of the magistrate court's holdings: (1) Parents failed to contact Child without just cause; and (2) Parents failed to provide financial support for Child. First, Parents argue that the magistrate court erred in finding that they had failed to contact Child without just cause because the findings of fact show that Mother was attempting to contact Child as recently as August 2016. Second, Parents argue that the magistrate court erred when it found that they had failed to provide financial support for Child. Parents contend that the

magistrate court erred because it did not consider that they were of limited financial means and had significant financial responsibility for Siblings.

According to Idaho Code section 16-2005, a court may terminate a parent-child relationship if it finds "that termination of parental rights is in the best interests of the child and that one (1) or more of the following conditions exist: (a) The parent has abandoned the child." I.C. § 16-2005(1)(a).

> "Abandoned" means the parent has willfully failed to maintain a normal parental relationship including, but not limited to, reasonable support or regular personal contact. Failure of the parent to maintain this relationship without just cause for a period of one (1) year shall constitute prima facie evidence of abandonment under this section; provided however, where termination is sought by a grandparent seeking to adopt the child, the willful failure of the parent to maintain a normal parental relationship as provided herein without just cause for six (6) months shall constitute prima facie evidence of abandonment.

I.C. § 16-2002(5).

> Whether a parent maintains a normal parental relationship depends on the facts and circumstances of each case. *Doe* [*I v. Doe II*], 150 Idaho [46], 50, 244 P.3d [190], 194 [(2010)]. In making this determination a court should consider evidence of the logistical and financial difficulties associated with maintaining the parental relationship. *Id. . . .* Evidence of a hostile relationship between parents may also be evidence of just cause and may mitigate against a parent's failure to take advantage of all possible avenues of reconnection. *Id.*

*In re Doe (2013-30)*, 156 Idaho 532, 537, 328 P.3d 512, 517 (2014).

> The key issue regarding willfulness is whether the parent is capable of maintaining a normal relationship with the child. *Doe I v. Doe II* [*(2009-02)*], 148 Idaho 713, 716, 228 P.3d 980, 983 (2010) ("For one to willfully fail to do something, he or she must have the ability to do it."). For example, in *Doe v. Doe I* [*(2009-12)*], "there was nothing that prevented [the parent] from making some attempt to develop a parent-child relationship" with his daughter, but he nonetheless made "no meaningful effort" to do so. 149 Idaho 392, 397, 234 P.3d 716, 721 (2010).

*In re Doe (2013-14)*, 155 Idaho 505, 508, 314 P.3d 187, 190 (2013).

In *Doe I v. Doe II (2016-23)*, a mother allowed her two children to live with their grandparents. 161 Idaho 532, 534, 387 P.3d 785, 787 (2016). For unknown reasons, the Idaho Department of Health and Welfare took the children from the mother and placed them with their grandparents, who were later awarded guardianship. *Id.* The grandparents filed a petition to terminate the mother's parental rights. *Id.* The magistrate court noted that, although the mother was a good playmate to the children, she failed to provide financial support to the children, help

the grandparents cover the cost of keeping the children, or cover expenses of any kind. *Id.* The magistrate court also noted that the mother made approximately five phone calls and five visits to the children over a seven month period. *Id.* Ultimately, the magistrate court terminated the mother's parental rights as to her two children after finding that the mother had abandoned the children by: (1) failing to provide reasonable support without just cause; and (2) failing to maintain personal contact. *Id.* at 536, 387 P.3d at 789.

This Court affirmed the magistrate court's termination of the mother's parental rights after finding that clear and convincing evidence established that the mother had abandoned the children by failing to provide reasonable support without just cause. *Id.* In so holding, this Court highlighted the fact that the mother had "some financial resources," yet did not support the children in any way, but for buying them "some toys, [and] little stuff." *Id.* This Court reasoned that the magistrate court's alternate basis for finding abandonment, *i.e.*, the mother's lack of personal contact with the children, did not need to be addressed because the finding of lack of reasonable support, by itself, established abandonment. *Id.*

Substantial and competent evidence supports the magistrate court's termination of Parents' parental rights. The magistrate court authored a thorough Findings of Fact, Conclusions of Law, and Order, wherein it acknowledged that Parents' parental rights may only be terminated if clear and convincing evidence supported the decision. Then, the magistrate court reviewed numerous instances of Parents' willful abandonment and found that termination was in the best interest of Child.

This Court is not persuaded by Parents' argument that the magistrate court erred by concluding that they failed to provide financial support to Child. In *In re Doe (2013-14)*, this Court provided that "[t]he key issue regarding willfulness is whether the parent is capable of maintaining a normal relationship with the child." 155 Idaho 505, 508, 314 P.3d 187, 190 (2013). Further, in *Doe I v. Doe II (2016-23),* this Court affirmed the termination of parental rights based on the fact that the mother had "some financial resources," yet did not support the children in any way. 161 Idaho at 536, 387 P.3d at 789. Here, the magistrate court acknowledged that Parents were of limited financial means, but noted that Parents "presumably . . . had the resources to provide something for [Child]" because they had the resources to support Siblings and to allow Father to maintain a relationship with his daughter in California, which included regular road trips and stays in motels. Further, the magistrate court noted that Father earned between $1,200

and $1,600 per month and was underemployed by choice. The magistrate court found that, despite presumably having the resources to support Child, Parents "failed to provide any support of any kind for [Child] . . . [for] a period in excess of two years." Accordingly, the magistrate court's finding of abandonment based on failure to provide reasonable support without just cause is supported by substantial, competent evidence.

As noted by this Court in *Doe I v. Doe II (2016-23)*, a finding that a parent has failed to provide reasonable support without just cause, by itself, establishes abandonment. 161 Idaho at 536, 387 P.3d at 789. Therefore, this Court need not address the magistrate court's alternate basis for finding abandonment, *i.e.*, that Parents failed to contact Child without just cause.

**B.      The magistrate court did not err when it concluded that termination of Parents' parental rights was in the best interest of Child because substantial, competent evidence supports the conclusion.**

Parents argue that the evidence does not support a conclusion that termination was in the best interest of Child. Parents claim that the magistrate court's focus on Child's educational delay was error because: (1) Child had only attended first grade before living with Grandparents; and (2) Parents provided an environment that fostered educational growth as demonstrated by Siblings' success at school. Further, Parents dispute the magistrate court's finding that Child came to Grandparents frightened and in need of safety and security due to Parents' use of corporal punishment. In support of their position, Parents note that: (1) they have not committed any crimes or been incarcerated during this case; (2) charges have not been filed for child abuse; and (3) Siblings were found to be safe after the Idaho Department of Health and Welfare was called by Grandmother.

> "Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. When considering the best interests of the child, a trial court may consider numerous factors." *In re Doe (2015–03)*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015) (quoting *In re Doe (2014–15)*, 157 Idaho 765, 772, 339 P.3d 1169, 1176 (2014)); I.C. § 16–2005(1).

*Idaho Dep't of Health and Welfare v. Doe (2016-11)*, 160 Idaho 824, 833, 379 P.3d 1094, 1103 (2016).

There is not an exhaustive list of factors that a court must consider when analyzing whether termination of parental rights is in the best interest of a child. However, this Court has previously considered: the financial contribution of the parents to the child's care after the child

is removed from their care; the child's improvement after being removed from the parents' care; and testimony from social workers and guardians *ad litem. Idaho Dep't of Health and Welfare v. Doe (2016-11)*, 160 Idaho 824, 834, 379 P.3d 1094, 1104 (2016); *In re Doe (2014–15),* 157 Idaho 765, 772, 339 P.3d 1169, 1176 (2014).

Substantial, competent evidence supports the magistrate court's conclusion that termination of Parents' parental rights was in the best interest of Child. Every factor listed above supports the magistrate court's conclusion. First, as discussed above, Parents have failed to financially support Child. Second, there is considerable testimony regarding Child's physical, emotional, and academic improvement since being removed from Parents' care. For example, Child's counselor testified that Child "came in with a lot of fear, anxiety, repeated nightmares . . . . She was afraid of all men in general." However, since being removed from Parents' care, Child has made "[a] lot of progress. . . . She went from not being able to sleep alone to being able to sleep in her room. Her nightmares decreased significantly . . . . She became much more comfortable with different relationships with other people . . . . Her fear of men, you know, subsided. . . . she started excelling in school . . . ." Third, the guardian *ad litem* recommended termination of Parental rights. The guardian *ad litem* also testified that Child "very much wants to be with [Grandparents]. And when I asked . . . why an adoption, in her mind . . . it's the only way that her ten-year-old-brain can put to rest the idea that at some point in time she's going to be removed from [Grandparents] and sent back to live with [Parents] in what she perceives to be an unsafe environment." In sum, substantial, competent evidence supports the magistrate court's conclusion that termination of Parents' parental rights is in Child's best interest.

## C.      Grandparents are not entitled to attorney fees on appeal.

Parents do not request attorney fees on appeal. Grandparents' request for attorney fees on appeal is merely mentioned in passing and is not supported with cogent argument; therefore, this Court will not consider the issue. *Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010) (citing *Inama v. Boise Cnty. Bd. of Comm'rs*, 138 Idaho 324, 330, 63 P.3d 450, 456 (2003)) ("Regardless of whether an issue is explicitly set forth in the party's brief as one of the issues on appeal, if the issue is only mentioned in passing and not supported by any cogent argument or authority, it cannot be considered by this Court.").

**VI. CONCLUSION**

This Court affirms the magistrate court's Final Judgment terminating Parents' parental rights. Costs on appeal are awarded to Grandparents. Attorney fees on appeal are not awarded to either party.

Chief Justice BURDICK, Justices HORTON, BRODY and BEVAN, CONCUR.