**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 41681**

| | |
|---|---|
| IN THE MATTER OF THE TERMINATION OF PARENTAL RIGHTS OF JOHN DOE (2013-30) AND IN THE MATTER OF THE ADOPTION OF JOHN DOE I. <br><br> _____ <br><br> JOHN DOE, (2013-30), <br><br>   Petitioner-Appellant, <br><br> v. <br><br> JOHN DOE II, <br><br>   Respondent. <br> _____ | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Boise, April 2014 Term <br><br> 2014 Opinion No. 62 <br><br> Filed: June 24, 2014 <br><br> Stephen W. Kenyon, Clerk |

Appeal from the magistrate court of the Third Judicial District of the State of Idaho, Canyon County.  Hon. Gary D. DeMeyer, Magistrate Judge.

The judgment of the magistrate court is <u>vacated</u> and the case is <u>remanded</u> for action consistent with the Opinion.

Nicholson, Migliuri Rodriguez, PLLC, Twin Falls, attorneys for appellant. Lisa B. Rodriguez argued.

Stoppello Law, PLLC, Boise, attorney for respondent.  Matthew F. Stoppello argued.

_____

W. JONES, Justice

### I. NATURE OF THE CASE

This is an expedited appeal by John Doe ("Father") from an order terminating Father's parental rights over his minor child ("Child") and granting Child's stepfather's (John Doe II) ("Stepfather") Petition to Adopt Child. The magistrate court found that Father had abandoned Child and failed to maintain regular contact with and support the minor child without just cause. Father stopped having contact with Child in April 2007, after Mother changed her contact information. In 2012, Father brought a motion to modify child custody. In response, Mother and her new husband, Stepfather, sought termination of the Father's parental rights, and Stepfather

filed a petition for adoption of the minor child. The magistrate court terminated Father's parental rights and granted Stepfather's petition. Father appeals.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Mother and Father were married on June 23, 2001. Mother became pregnant with Child in the fall of 2005. In January 2006, Father filed for divorce in Twin Falls on the basis of irreconcilable differences. Mother and Father were both represented by counsel and reached a settlement agreement. That settlement provided that Mother would be awarded sole legal and physical custody of the unborn child, that Father would consent to termination of his parental rights, and that Father would not be obligated to pay child support. Mother also received substantial equity in a house that Father owned. Father signed the settlement agreement, but he changed his mind and never signed the consent to termination. Mother and Father did not continue to live together after the divorce. But while Mother was pregnant with Child, she informed Father of her doctor visits and Father attended some of the appointments. Child was born in April of 2006. Mother called Father to the hospital on the day that Child was born, and Father went to the hospital.

Following the birth of Child, Mother stayed with her parents in Caldwell for a few weeks. During this time, Father traveled to visit Mother and Child. In June of 2005, Mother and Father reconciled their relationship. Mother, Father, and Child began living together in Father's house in Filer, where Father worked and co-owned a local bakery. During this time, Mother was working at Premier Insurance in Twin Falls, and Father's mother was watching Child during the day. One day, Mother came home and found Father's sister watching Child instead of Father's mother. Mother was upset, and following this event, Father had a falling out with his parents, with whom he ran the bakery. After this incident, Father quit his work at the bakery to act as a stay-at-home dad for Child.

In late 2006, it was the intention of both Father and Mother to relocate to Boise. Father placed his house in Filer for sale in late 2006. Mother interviewed for a job in Boise at the end of January 2007, and moved to Boise shortly thereafter. Mother moved in with her sister in Nampa. After Mother moved to Nampa, she recalls conversations regarding Father moving to Boise. During this time, Father was frequently texting Mother about Child. Father would also travel to Nampa on weekends to see Child. Mother also thinks she might have traveled to Filer to see Father during this time as well.

On or near April 7, 2007, Mother hosted a birthday party for Child at her parents' home in Nampa. Father attended the birthday party and stayed for several hours. Everything went well at the party. This was the last time that Father had contact with Child. For a short time after the party, Father continued to text Mother and stayed in touch with her regarding Child. Towards the end of April 2007, Mother met Stepfather and began spending time with him. Right around this same time, Mother claims that she asked Father to sign the consent to terminate parental rights, which Father refused to do. Father asserts that Mother said that he would never see Child again.

Sometime around May 2007, Mother moved from her sister's house in Nampa and changed her telephone number. Mother did not provide her new telephone number to Father. Mother did not provide Father with her new address. Mother introduced Stepfather to Child sometime in the summer of 2007. Father mailed presents to Mother's parents intended for Child for Christmas 2007, Child's birthday in 2008, and Christmas 2008. Mother did not give any of these presents to Child and had the packages returned to sender. In March 2008, Mother switched jobs and began working at Premier Insurance in Boise. Mother did not provide her new place of employment to Father. Mother moved in with Stepfather in 2008, and married him on June 5, 2010.

Stepfather and Mother have a child together, and Stepfather has been acting as a fatherlike figure for Child. Child does not know who Father is, but Child does know in a very basic sense that Stepfather is not his biological father. Father was not providing financial support to Child.

In late 2011, Father received information regarding Mother's employment in Boise at Premier Insurance. Father brought a motion to modify the child custody order in the divorce action in order to have visitation with Child in 2012. On June 7, 2012, in response to Father's motion to modify, Mother and Stepfather filed a petition for adoption and termination of Father's parental rights. Stepfather filed a motion for summary judgment, which was denied on December 13, 2013. The Twin Falls County modification case has been stayed pending a decision in the Canyon County termination case. The magistrate court ordered a Health and Welfare evaluation by Delaynia Winchester. The magistrate court entered its Findings of Fact and Conclusions of Law in this matter on November 19, 2013, terminating Father's parental rights and granting Stepfather's petition to adopt Child. An order terminating parental rights was filed on December

2, 2013. An order for adoption was filed on December 2, 2013. Father filed a Notice of Appeal on December 16, 2013. A final judgment was entered on December 19, 2013.

### III. ISSUE ON APPEAL

Whether the magistrate court erred when it terminated Father's parental rights and granted Stepfather's petition for adoption.

### IV. STANDARD OF REVIEW

Each parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 55 (2000); *Doe v. Doe*, 150 Idaho 46, 49, 244 P.3d 190, 193 (2010). Therefore, grounds for termination must be shown by clear and convincing evidence. *Doe*, 150 Idaho at 49, 244 P.3d at 193. Clear and convincing evidence is evidence that indicates that the thing to be proved is highly probable or reasonably certain. *In re Adoption of Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). On appeal this Court conducts an independent review of the magistrate court record. *Doe*, 150 Idaho at 49, 244 P.3d at 193. This Court will not disturb the magistrate court's findings of fact if supported with substantial, competent evidence. *Id.*

### V. ANALYSIS

The magistrate court found that Father abandoned Child pursuant to I.C. § 16-2005(a). The magistrate court found that Father abandoned his child because he failed to provide reasonable support to Child and failed to maintain regular personal contact. The magistrate court noted that Father did not hire a private investigator to locate Mother. The magistrate court did not discuss Mother's change of her contact information nor Mother's return of gifts intended for Child. The magistrate court also found that "[Mother] did nothing to secret herself or [Child] from [Father]." The magistrate court granted Stepfather's adoption petition, but it did not discuss that matter other than to say that Delaynia Winchester recommended termination of parental rights and adoption. Finally, the magistrate court failed to make any findings regarding the best interests of Child.

Father argues that the magistrate court erred when it terminated his parental rights to Child. Father argues that the magistrate court's finding of abandonment is erroneous because it failed to consider Father's willfulness and whether his contact with Child was without just cause. Father argues that his lack of contact with Child was not willful but was caused by Mother's failing to provide Father with information and intentionally concealing Child from Father.

4

Finally, Father argues the magistrate court erred when it granted Stepfather's petition for adoption because Mother testified that she believed it was in Child's best interest to know his biological father at some point.

Mother argues that the magistrate court did not err when it found that Father willfully abandoned Child because the testimony indicates that Father "simply chose not to maintain or even attempt to maintain a relationship with the Child." Mother argues that Father's failure to stay in contact with Child was not supported by just cause because she did not receive any financial support from Father other than the lump sum payout during the divorce, which Mother contends she had no way of knowing she was expected to use for Child. Mother also argues that Father's evidence of steps he took to stay in touch with Child was not substantial evidence because the magistrate court found it unpersuasive. Finally, Mother argues the petition for adoption was properly granted because Stepfather acts as a father figure to Child and after a home study, Delaynia Winchester recommended adoption.

Idaho Code § 16-2005 provides for the termination of parental rights. Parental rights may be terminated on the basis of abandonment: "(1) The court may grant an order terminating the relationship where it finds that **termination of parental rights is in the best interests of the child <u>and</u>** that one (1) or more of the following conditions exist: (a) The parent has abandoned the child." I.C. § 16-2005(1)(a) (emphasis added). Idaho Code § 16-2002(5) defines "abandoned" as follows:

> "Abandoned" means the parent has willfully failed to maintain a normal parental relationship including, but not limited to, reasonable support or regular personal contact. Failure of the parent to maintain this relationship without just cause for a period of one (1) year shall constitute prima facie evidence of abandonment under this section . . . .

When proving abandonment, this Court requires a burden shifting analysis be employed:

> The petitioner holds and retains the burden of persuasion to show that abandonment has occurred. This includes a showing that the defendant parent is without just cause for not maintaining a normal relationship with the child. [*Doe I v. Doe*, 138 Idaho 893, 903–04, 71 P.3d 1040, 1050–51 (2003)]. If the petitioning party makes the prima facie case, then the defendant parent holds the burden of production to present evidence of just cause. *Id.* If the trier of fact finds that there are no valid defenses or "just causes," then the petitioning party has met the burden of persuasion. *Id.*

*In re Adoption of Doe*, 143 Idaho at 192, 141 P.3d at 1061.

1.    *The magistrate court made no findings regarding the best interests of Child.*

5

The magistrate court did not make any findings of fact that termination of Father's rights to Child were in the best interests of Child. The Idaho Code expressly requires a magistrate court to take this step before it takes the drastic step of terminating a parent's constitutionally protected interests in maintaining a relationship with his or her child. *Doe v. Doe*, 150 Idaho 46, 49, 244 P.3d 190, 193 (2010). Here, not only did the magistrate fail to make these findings, but Mother actually testified that she believes it is in Child's best interests to eventually know Father.

2.   *The magistrate court's findings regarding abandonment are not supported by substantial and competent evidence.*

We vacate the magistrate court's termination of Father's parental rights because the magistrate court's finding of abandonment—on which its order hinges—is not supported by substantial and competent evidence. Whether a parent maintains a normal parental relationship depends on the facts and circumstances of each case. *Doe*, 150 Idaho at 50, 244 P.3d at 194. In making this determination a court should consider evidence of the logistical and financial difficulties associated with maintaining the parental relationship. *Id.* Additionally, the failure of a parent to send cards or communicate with a child via telephone is not dispositive of a parent's failure to communicate where the age of a child lessens the meaningfulness of that form of communication. *Id.* Evidence of a hostile relationship between parents may also be evidence of just cause and may mitigate against a parent's failure to take advantage of all possible avenues of reconnection. *Id.*

In *In re Adoption of Doe*, 143 Idaho at 192, 141 P.3d at 1061, this Court held that where a fundamental liberty interest is a stake, the court *cannot ignore* relevant evidence. This Court held that the magistrate court erred when it found abandonment even though the father offered evidence of his financial difficulties and injuries that made traveling between Phoenix—where mother moved with the child—and Lewiston difficult. *Id.* This Court further found evidence of just cause where the mother thwarted father's attempt to visit the child. *Id.*

The magistrate court's finding that Father abandoned Child is not supported by substantial, competent evidence. It is undisputed that Father has not had contact with Child for over one year. Thus, Mother has established a prima facie case of abandonment. The burden of production was on Father to demonstrate just cause. The record uncontrovertibly establishes that Father's failure to maintain contact with Mother was supported by just cause. The magistrate court failed to address significant evidence in the record demonstrating Mother's concealment and hostility towards Father, which on the facts of this case establishes just cause.

6

First, the magistrate court found that Father willfully abandoned his child because Father "made no effort" to contact Mother. This finding is not supported by substantial, competent evidence. Father offered evidence that he tried to call and text Mother, but Mother having changed her number did not receive those messages. Additionally, Father continued to send Christmas and birthday gifts to Child in the only way he knew how—through Child's grandparents. Yet Mother returned these gifts to Father. Mother relies on the fact that the gifts did not include any notes. This Court has clearly held that notes do not demonstrate a failure to maintain a parental relationship when the child is very young. *In re Doe (2011-23)*, 153 Idaho 258, 264, 281 P.3d 95, 101 (2012). In this case, Child was very young and would not be able to read whatever notes Father could have sent; however, Child could have played with and appreciated the gifts sent by Father in a way that Child, in his young age, could not appreciate a note

Second, the magistrate court found that Father abandoned his child because he "did not hire a private investigator to locate [Mother]." This Court has issued numerous decisions that a court must consider the logistical and financial difficulties associated with maintaining a relationship. Here, Mother testified that both she and Father intended to move to Boise. Mother testified that she knew Father was trying to sell his house in Filer so he could relocate to Boise. Mother also testified that she knew that Father quit his job at the bakery because of a fight that Mother had with Father's mother over Father's sister. As a result Father quit his job so he could watch Child. This Court will not condition a parent's constitutionally protected rights to maintain a relationship with his or her child on whether that parent hired a private investigator where the need for a private investigator arose from the conduct of the person seeking termination of those rights.

Third, the magistrate court found that Father "elected not to" contact Mother's family members. Father sent gifts to Mother's family in hopes they would be given to Child. Mother and her family refused to give the gifts to Child and returned them to Father. Father also testified that Mother's parents did not like him. This evidence is supported by the disregard Mother's parents showed to his relationship with Child when they never gave to Child the gifts intended for Child. Mother also testified that she did not have a good relationship with Father's parents because of the divorce. Mother thus concedes that the parties' divorce interfered with their relationship with their parents. Mother, though not admitting that her parents disliked Father,

7

acknowledged that her parents were unhappy with the circumstances between Mother and Father.

Fourth, the magistrate court found that Father made no efforts to inquire into Mother's location from her friends. Jenifer Fiscus, a friend and colleague of Mother, testified that Father did approach her in October of 2007. Ms. Fiscus testified that she was aggressive towards Father and admitted that she did not want to provide any information to Father. This Court has never held that a parent must exhaust all possible connections before failure to maintain a parental relationship is supported by just cause. To the contrary, this Court has found just cause where a party fails to pursue certain connections because the parent believes such pursuit might not be in the best interests of the child. *In re Adoption of Doe*, 143 Idaho 188, 192, 141 P.3d 1057, 1061 (2006). Here, Father believed Mother's parents did not like him and were not happy with him. Father's interactions with Mother's friends were that of hostility. It is certainly reasonable for Father to believe that aggressively harassing Mother's family and friends would not be in Child's best interests.

Fifth, the magistrate court found that "[Mother] did nothing to secret herself or [Child] from [Father]." This finding is not supported by the record. Mother testified that after Child's birthday in April 2007, she met Petitioner and asked Father to consent to termination of his parental rights. This is at least partially consistent with the testimony of Father and his new wife that Mother said Father would never see Child again. Then Mother admitted that she changed her telephone number. That number was the primary manner in which Father communicated with Mother about Child. Mother admitted she consciously did not give Father the number because she did not think it was required of her. She admitted that she relocated and consciously chose not to give Father her new address because she did not think it was required. It is certainly true that the separation agreement did not require Mother to provide Father with her contact information; however, where Mother subsequently seeks to terminate Father's parental rights this excuse lacks merit. Mother assigns fault to Father for not contacting her through her employer, but Mother changed jobs shortly after secreting herself from Father and did not give Father her new employment information. Mother returned Father's gifts for Child. Mother demonstrated a conscious choice to remove Father from her and Child's life. After successfully concealing Child, she seeks to terminate Father's parental rights.

Sixth, the magistrate court found that Father "simply did nothing after April 2007 to maintain a parent child relationship with [Child]." The record is uncontroverted that after Child's birthday party, Father continued to text Mother about Child until Mother changed her phone number. Father continued to send Christmas and birthday gifts to Child, which Mother never delivered. Next, Mother's testimony recognized that Father was unemployed at the time and trying to sell his house to relocate to Boise. Father did not live near Mother, her believed employer, or her family. Father had to travel to Boise. Father testified that he searched the internet and social media about Mother's location, spoke with a former roommate of Mother's in Filer, and spoke with former coworkers of Mother. Father testified that he only discovered Mother's whereabouts after he accidentally ran into an old acquaintance—whose name Father could not remember—who worked at Premier Insurance in Twin Falls. Father and the acquaintance discussed Mother. The acquaintance informed Father that Mother was hired in the Boise office of Premier Insurance, which Father then used to track down Mother. The mere fact that Father eventually discovered information about Mother and then proceeded to modify the custody order demonstrates that Father was in fact active after April of 2007 to locate Mother and Child.

The magistrate court relied on the fact that Father did not contribute any financial support to Child after Mother and Child moved to Boise. Yet, the Twin Falls divorce order provided that Father had no child support obligations because Mother had sole custody. Father also produced evidence that Mother received significant equity in a house that was his separate property as consideration for this order. The magistrate court did not consider or even address this argument. The magistrate's court's finding that Father did not provide Mother any financial support for Child is weakened by the fact that Mother admittedly changed her contact information and place of residence. Additionally, Father provided financially for the Child before Mother moved to Nampa in late January 2007, and Mother admits that she and Father were discussing his moving to Boise after his house sold in Filer.

Though the record of Mother and Father's divorce in Twin Falls County is not part of the record before this Court, Father contends their divorce agreement contemplated that Mother would use equity in Father's separate property to support Child and relieve him of obligations to pay child support. The validity of such an agreement may be questionable, but the parties do not dispute that Mother never sought child support from Father and Father did not believe he owed

9

child support because of the divorce agreement. While Father's belief that he was under no obligation to pay child support might well be erroneous, it demonstrates that Father's failure to pay child support was not willful. Father's interactions with Child up until Mother's disappearance demonstrate a pattern of him supporting Child financially.

We hold that the magistrate court abused its discretion when it found that Father abandoned Child. Termination of Father's parental rights is not supported by substantial and competent evidence. Based on the facts of this case, termination of Father's parental rights is premature. The record demonstrates that Mother secreted herself and Child from Father. The record demonstrates that Father was active in Child's life up until Mother asked Father to terminate his rights and then changed her number, job, and place of residence. Termination is a drastic and final remedy. Now that Father knows of Child's location, if Father fails to support Child and exercise his parental duties Mother and Stepfather can seek to terminate Father's parental rights. However, given the circumstances of this case, at the present time termination is premature.

## VI. Conclusion

The magistrate court's judgment terminating Father's parental rights is vacated. The case is remanded for proceedings consistent with this Opinion. Neither party requested attorney fees on appeal. Costs on appeal are awarded to Father.

Chief Justice BURDICK, and Justices EISMANN, J. JONES and HORTON CONCUR.