## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 42301

|  |  |
|---|---|
| MICHAEL L. KELLY, d/b/a CHS ELECTRIC, | ) |
|  | ) |
|  | ) Boise, January 2017 Term |
|     Plaintiff-Counterdefendant-Respondent, | ) |
|  | ) 2017 Opinion No. 26 |
|  | ) |
| v. | ) Filed: March 2, 2017 |
|  | ) |
| PAMELA WAGNER, d/b/a DIVERSIFIED FINANCIAL MANAGEMENT GROUP, | ) Stephen W. Kenyon, Clerk |
|  | ) |
|     Defendant-Counterclaimant-Appellant. | ) |
| _____ | ) |

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. Hon. Richard C. Christensen, District Judge.

The judgment of the district court is <u>affirmed</u>. Costs on appeal are <u>awarded</u> to respondent.

Bistline Law, PLLC, Coeur d'Alene, attorneys for appellant.

Cameron Phillips, Coeur d'Alene, attorneys for respondent.

_____

JONES, Justice

### I. NATURE OF THE CASE

This appeal arises out of a lawsuit brought by a contractor, Michael L. Kelly ("Kelly"), against his former client, Pamela Wagner ("Wagner"), alleging nonpayment of amounts due to him for the performance of construction work on certain property (the "Property"). The district court found in favor of Kelly and awarded him a total judgment of $13,762.54 ($4,694.64 of damages and $9,067.90 of prejudgment interest). On appeal, Wagner argues that the district court erred in finding that Kelly was owed for the construction work. She further argues that the district court erred in awarding prejudgment interest to Kelly.

### II. FACTUAL AND PROCEDURAL BACKGROUND

In 2004, Wagner purchased the Property at a foreclosure sale. Shortly thereafter, Wagner approached Kelly, a licensed electrical contractor doing business as CHS Construction, with a

1

list of repairs and other remodeling projects needed for the Property. Kelly provided Wagner with proposals for the projects listed. Over a period of 18 months, Kelly submitted roughly 40 proposals for various projects on the Property. This included converting two bedrooms into offices, installing French doors in the master bedroom, sanding and refinishing cabinets, constructing a rear entrance, painting the interior, and repairing water and mold damage. After each job was completed, Kelly submitted an invoice to Wagner and then reviewed the invoice with her line by line. After each invoice was reviewed, Wagner paid Kelly for the work done and let him know if she had additional jobs.

In late 2005, Kelly failed to pay a bill that he owed to a subcontractor hired to work on a heating system on the Property. *Id.* The subcontractor filed a lien on the Property, notification of which was delivered to Wagner in November 2005. *Id.* Although the lien was eventually removed after Kelly paid the subcontractor the amount owed, the relationship between Kelly and Wagner did not recover. Wagner terminated Kelly shortly thereafter.

On February 27, 2009, Kelly filed a complaint with the district court (the "Complaint"). The Complaint alleged that Wagner had failed to pay certain invoices in an amount exceeding $10,000. Therein, Kelly requested money damages in the amount of the unpaid invoices along with pre and post judgment interest. On October 20, 2011, Wagner filed an answer and counterclaim (the "Answer" and the "Counterclaim"). The Answer provided that "[Wagner] admits that she has refused to pay certain invoices and affirmatively alleges she was justified in withholding payment." The Counterclaim alleged that Kelly "failed to perform in a workmanlike manner and failed to complete certain aspects of the agreed upon scope of work."

On April 9, 2013, the district court conducted a hearing. At that hearing, Kelly submitted six invoices for the following work he had performed on the Property: (1) installing French glass doors; (2) moving furniture and appliances; (3) repairing water leaks on an exterior deck; (4) scraping snow and ice off of the deck; (5) custom woodwork; and (6) painting the middle floor. He then went through the invoices, one by one, and testified that he had not been paid for any of the work described therein. The amounts in the invoices totaled $10,635,32.

On cross examination, Wagner's attorney questioned Kelly with respect to how he knew the invoices were unpaid. Kelly responded:

Because I would sit down with her when I gave her the invoice and she would pay me. She would get a copy of it and I would have a copy of it. She pretty much

2

paid me on – when I gave her the invoices all the way up until the last batch she was given, we sat down and went over every one line per line.

Later at the same hearing, Wagner's attorney asked "On those invoices that we have in evidence today, did you sit down with her and go over those invoices?" Kelly answered, "I don't know which exact invoices I sat down with her on or not. I can't testify either way."

Wagner also provided testimony at the April 9, 2013 hearing. She testified that all of the invoices she had received from Kelly were paid. When confronted with her statement in the Answer that "Defendant admits she has refused to pay certain invoices," she responded that "I did not owe him any money." Wagner then attempted to address each of the invoices individually, but was unable to match any of the submitted invoices with the checks she had paid to Kelly.

In addition to receiving testimony at the April 9, 2013 hearing, the district court also addressed a motion to dismiss filed by Wagner. Therein, Wagner argued that the business transactions between Wagner and Kelly constituted an "open account" under Idaho law. Wagner reasoned that in order to recover on an open account, a claimant must provide evidence of all amounts received during the existence of the open account as well as proof of the services rendered. The district court rejected the motion. It reasoned that "I don't believe that the evidence of the law requires [Kelly] to break down each and every job that he ever did and how much he received and how much he applied each payment to . . . what work he performed."

On July 15, 2013, the district court issued a Decision Upon Court Trial (the "Decision"). Therein, the district court held that:

> Kelly has the burden to prove the unpaid invoices, and has testified to contractual practices between the parties and method of receiving payment. The court finds that testimony persuasive in establishing that Kelly performed work for Wagner for which he has not been paid in the amount of $9,429.64.

The $9,429.64 amount constituted the sum of the allegedly unpaid invoices submitted to the district court excepting the invoice for custom woodwork. With respect to the woodwork invoice, the district court found that:

> That invoice confuses because it reflects work ordered on two dates. At the top of the invoice it notes 12–05 and that the bottom it shows 1–3–06 with a 12–05 completion date. Possibly the January entry was an error which should have reflected work requested in November. Kelly's proof falls short on that invoice.

With respect to Wagner's argument that she had paid the amounts due in the invoices, the district court found that:

3

Wagner introduced in evidence exhibit A, which is her checking account records, reflecting checks paid to CHS Electric between March 22, 2005 and December 13, 2005. . . . Some of these check entries have notations for work related to the payment. . . . None of the checks reflects [sic] a payment in the amount of any of the six invoices upon which Kelly seeks recovery. . . . Her notations do not relate to the work set forth in Kelly's invoices with the possible exception of exhibit # 6 which was for woodwork.

The district court also addressed its denial of Wagner's motion to dismiss. It concluded that:

The facts of the present case do not establish an open account but rather a series of individual contracts for construction services. Wagner would request work for which Kelly would put together a standard bid, perform the work, submit an invoice and receive payment.

Finally, the district court awarded Wagner $4,285.00 on her counterclaim for construction defects in relation to Kelly's work on the back entrance, for which Kelly had been paid. The district court also awarded Wagner $450.00, which she had paid to secure a release of the lien taken out by Kelly's subcontractor.

Following the district court's findings, Kelly submitted a proposed judgment to the district court. The proposed judgment contained prejudgment interest in Kelly's favor on the full $9,429.64. Wagner objected, arguing that prejudgment interest was improper because Kelly's award was not a liquidated sum or was not readily ascertainable by a mathematical process. Wagner also argued that because the award on Wagner's counterclaim was unliquidated, Kelly could not receive prejudgment interest on his award.

On April 25, 2014, the district court granted prejudgment interest to Kelly on the full $9,429.64. It reasoned that:

In the instant case the amount awarded to the plaintiff was, again, the sum of separate and distinct contracts and thus prejudgment interest is properly awardable. The amount awarded as damages to the defendant was the sum of unliquidated damages that were separate and distinct from the invoices for which plaintiff was awarded damages.

On May 20, 2014, the district court entered judgment in Kelly's favor in the amount of $18,394.58 (which includes prejudgment interest) subject to an offset of $4,735.00 in favor of Wagner on her counterclaim. This left a net judgment in favor of Kelly in the amount of

4

$13,762.54.[1] The district court also granted attorney's fees and costs to Kelly upon the timely submission of a memorandum of fees and costs.

Wagner appeals.

### III. ISSUES ON APPEAL

**1.**    Did the district court err in finding that Wagner owed Kelly $9,429.64 on account of unpaid invoices?

**2.**    Did the district court err in determining that Wagner and Kelly were not in an "open account" agreement?

**3.**    Did the district court err in awarding prejudgment interest on the full $9,429.64?

**4.**    Is Wagner entitled to attorney's fees on appeal?

### IV. STANDARD OF REVIEW

> On review by this Court, a trial court's conclusions following a bench trial will be limited to a determination of whether the evidence supports the trial court's findings of fact, and whether those findings support the conclusions of law. *Oregon Mut. Ins. Co. v. Farm Bureau Mut. Ins. Co. of Idaho*, 148 Idaho 47, 50, 218 P.3d 391, 394 (2009). This Court will "liberally construe the trial court's findings of fact in favor of the judgment entered, as it is within the province of the trial court to weigh conflicting evidence and testimony and judge the credibility of witnesses." *Id.*; *see also Beckstead v. Price*, 146 Idaho 57, 61, 190 P.3d 876, 880 (2008) (regarding findings of fact in view of the trial court's role as trier of fact). This Court will not disturb findings of fact on appeal that are supported by substantial and competent evidence, even if there is conflicting evidence at trial. *Panike & Sons Farms, Inc. v. Smith*, 147 Idaho 562, 565–66, 212 P.3d 992, 995–96 (2009). Only erroneous findings will be set aside. *Id.* at 565, 212 P.3d at 995. Also, this Court has always held that its view of the facts will not be substituted for that of the trial court. *See Weitz v. Green*, 148 Idaho 851, 857, 230 P.3d 743, 749 (2010). Finally, conclusions of law are freely reviewed by this Court, drawing its own conclusions from the facts presented in the record. *Griffith v. Clear Lakes Trout Co.*, 146 Idaho 613, 619, 200 P.3d 1162, 1168 (2009).

*Watkins Co., LLC v. Storms*, 152 Idaho 531, 535, 272 P.3d 503, 507 (2012).

### V. ANALYSIS

**A.    The district court did not err in determining that Wagner owed Kelly $9,429.64 on account of unpaid invoices.**

This Court will not disturb findings of fact on appeal that are supported by substantial and competent evidence, even if there is conflicting evidence at trial. *Panike*, 147 Idaho at 565–

---

[1] The Court notes that the net judgment arrived at by the district court ($13,762.54) is actually $102. 96 more than the amount awarded to Kelly ($18,394.58) minus the amount awarded to Wagner ($4,735.00). It is not clear from the judgment where this additional $102.96 comes from, however, because it was not at issue on appeal this Court will not address it.

5

66, 212 P.3d at 995–96. "Substantial and competent evidence is relevant evidence which a reasonable mind might accept to support a conclusion." *Lamar Corp. v. City of Twin Falls*, 133 Idaho 36, 42–43, 981 P.2d 1146, 1152–1153 (1999) (internal citations omitted).

The district court's finding that Wagner owed Kelly $9,429.64 was supported by substantial and competent evidence. Specifically, Kelly provided invoices for work that he had completed. Kelly reviewed each invoice before the district court and testified that he was not paid. Wagner does not deny that the work was completed or that she received the invoices. The invoices submitted to the district court, in conjunction with Kelly's testimony, constitute substantial and competent evidence of nonpayment.

On appeal, Wagner alleges that she provided evidence that Kelly was paid; specifically checks showing payments made to Kelly in December 2005, around the time that Kelly allegedly submitted the invoices to her. However, Wagner's testimony was called into question by the fact that the amounts of the checks she wrote in December 2005 are not reconcilable with the amounts of the invoices. Wagner could not provide any breakdown of which amounts paid corresponded to which invoices.

The district court did not find Wagner's testimony that she paid Kelly to be convincing. On appeal, Wagner has not shown this conclusion to be error. "This Court will not disturb findings of fact on appeal that are supported by substantial and competent evidence, even if there is conflicting evidence at trial." *Panike*, 147 Idaho at 565–66, 212 P.3d at 995–96. Therefore, we hold that the district court did not err in finding that Wagner owed Kelly $9,429.64.

## B. The district court did not err in determining that Wagner and Kelly were not in an "open account" agreement.

An action on an open account is "a particularized type of contract claim." *Beco Const. Co., Inc. v. Harper Contracting, Inc.*, 130 Idaho 4, 8, 936 P.2d 202, 206 (Ct.App.1997). "An open account refers to a continuing series of transactions between the parties, where the balance is unascertained and future transactions between the parties are expected." *Seubert Excavators, Inc. v. Eucon Corp.*, 125 Idaho 409, 415, 871 P.2d 826, 832 (1994). "Where an open account exists the parties are deemed to intend that individual items on the account will not be viewed separately but that the account will be considered as a connected series of transactions." *Kugler* [*v. Northwest*], 108 Idaho [884,] 887, 702 P.2d [922] 925 [(Ct.App.1985)]. Indeed, "[w]here materials are furnished for the same . . . improvement in installments and at intervals, and the parties intend them to be included in one account in settlement, the entire account will be treated as a continuous and connected transaction, and the lien limitation

6

begins to run from the last item of the contract." *Valley Lumber & Mfg. Co. v. Driessel*, 13 Idaho 662, 670, 93 P. 765, 768 (1907).

*Credit Suisse AG v. Teufel Nursery, Inc.*, 156 Idaho 189, 198, 321 P.3d 739, 748 (2014).

On review, the district court found that "the facts of the present case do not establish an open account but rather a series of individual contracts for construction services." It explained that "Wagner would request work for which Kelly would put together a standard bid, perform the work, submit an invoice and receive payment[.]" These findings are supported by substantial and competent evidence and are not error. Specifically, at the April 9, 2013, hearing, Kelly testified as follows:

> Q: Would it be more accurate to say that Pam Wagner initially hired you and said I'd like you to do this work and you said it would cost you this much money, and then you performed the work, and then you'd still be working for her, and then should would come to you and say, hey, I want you to do this project, and you'd say, hey, it would cost this much money, and she'd say, okay, go ahead and do it?
>
> A: Correct.
>
> . . .
>
> Q: Now for the time period that you worked for Mrs. Wagner and Mr. Wagner, how many different proposals did you put together, roughly?
>
> A: Wow, forty.
>
> Q: And these proposals would be distinct from one another as to the work to be performed?
>
> A: Yes.
>
> . . .
>
> A: I would sit down with her when I gave her the invoice and she would pay me. She would get a copy of it and I would get a copy of it. She pretty much paid me . . . when I gave her the invoices all the way up until the last batch she was given, we sat down and went over every line.
>
> . . .
>
> Q: She had always paid you every time you sat down with her and went over an invoice immediately, correct?
>
> A: Pretty much, yes.

The above testimony provided by Kelly supports the finding of the district court that Kelly and Wagner entered into "individual contracts for construction services" rather than maintaining an open account. The evidence shows the following pattern. Wagner would request that Kelly perform a task or series of tasks (an invitation to make an offer). Kelly would put

7

together a proposal (an offer). Wagner would agree to the proposal (acceptance). Kelly would complete the work (performance). Kelly would present an invoice for payment on performance. And, finally, Wagner would pay the invoice as soon as the invoice was presented (performance).

The district court was correct that this pattern does not indicate that the parties entered into an open account. "An open account refers to a continuing series of transactions between the parties, where the balance is unascertained." *Teufel*, 156 Idaho at 198, 321 P.3d at 748. In this case, the evidence shows that rather than having an unascertained balance for all projects, the projects were paid individually as they were completed.

Wagner argues that Kelly's total compensation was based on the total costs of all of the projects and not upon any specific invoice. This argument is unpersuasive. Kelly bid on and performed multiple jobs. The compensation for each job was based on the costs associated with that job. It follows that the grand total of compensation would be dependent upon the grand total of costs. However, this does not imply that the individual jobs were not individual contracts paid on an individual basis. Nor does it evidence the existence of an open account. Wagner has not shown on appeal that the district court's findings were clearly erroneous, or that the district court misapplied any law.

## C.    The district court did not err when it granted prejudgment interest to Kelly

> I.C. § 28-22-104 provides for the award of prejudgment interest of 12% for "money due by express contract." A trial court may award prejudgment interest from the date of the breach of contract when the amount upon which the interest is to be based is mathematically and definitely ascertainable. *Barber v. Honorof*, 116 Idaho 767, 770, 780 P.2d 89, 92 (1989). Prejudgment interest is warranted only when the principal amount of liability is liquidated or ascertainable by mere mathematical process. *Id.*; *see also Stoor's Inc. v. Idaho Dep't of Parks & Recreation*, 119 Idaho 83, 86, 803 P.2d 989, 992 (1990).

*Ervin Const. Co. v. Van Orden*, 125 Idaho 695, 704, 874 P.2d 506, 515 (1993).

The issue of when prejudgment interest is appropriate in a case where both a claim and a counterclaim are granted was addressed by this Court in *Pocatello Auto Color, Inc., v. Akzo Coatings, Inc.*, 127 Idaho 41, 46–47, 896 P.2d 949, 954–55 (1995). In that case, Pocatello Auto Color ("PAC"), a distributor of auto paint, sued Akzo, a manufacturer of auto paint, over the breach of a wholesale agreement. *Id.* at 43, 896 P.2d at 951. Akzo filed a counterclaim alleging that PAC had failed to pay for paint that had already been delivered. *Id.* On summary judgment, the district court found in Akzo's favor on the counterclaim, awarding Akzo $36,460.07, plus prejudgment interest. *Id.* After a trial, a jury awarded PAC $147,000 in damages arising out of its

8

breach of contract claims. *Id.* On appeal, PAC argued that Akzo should not have received prejudgment interest on its counterclaimed amounts because the district court should have set off PAC's unliquidated award before calculating prejudgment interest. *Id.* at 46, 896 P.2d at 954. This Court held that the district court did not err. *Id.* at 47, 895 P.2d at 955. In our decision in that case, we explained that even though the claim and counterclaim arose under the same contract, they were "not so closely related that the unliquidated claim renders the liquidated claim unascertainable." *Id.* We concluded that it was proper for the district court to award prejudgment interest on the counterclaim, and further that the calculation of such interest was proper prior to offsetting Akzo's counterclaim award against the award for PAC's original claim. *Id.*

As in *Akzo*, the district court in this case did not err in granting prejudgment interest. The amounts owed to Kelly were based on unpaid invoices for specific jobs. Those invoices were for definite mathematical amounts. Accordingly, the total amount was mathematically calculable by adding the invoices together. Wagner argues on appeal that the amount owed to Kelly could not be calculated because it would be offset by performance deficiencies. However, the alleged performance deficiencies related to completely different contracts for which Kelly had already been paid. Accordingly, the amount awarded on Wagner's counterclaim had no effect on the amounts awarded on Kelly's claims. Under this Court's precedent in *Akzo*, the district court did not err in granting prejudgment interest.

## D.      Wagner is not entitled to attorney's fees on appeal.

Wagner is not entitled to attorney's fees on appeal because she is not the prevailing party on appeal.

## VI. CONCLUSION

We affirm the district court's judgment. No attorney's fee are awarded on appeal. Costs to Kelly.

Chief Justice BURDICK, Justices EISMANN, HORTON and BRODY, CONCUR.

9