# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 51149

| | | |
|---|---|---|
| In the Matter of: John Doe, A Child Under Eighteen (18) Years of Age. | ) ) | |
| SHONDA and MATT QUEEN, Husband and Wife, | ) ) ) | Filed: June 25, 2025 |
| | ) | Melanie Gagnepain, Clerk |
| Petitioners-Respondents, | ) ) | |
| v. | ) ) | THIS IS AN UNPUBLISHED OPINION AND SHALL NOT |
| | ) | BE CITED AS AUTHORITY |
| NICHOLAS RAY CLEGG, | ) ) | |
| Respondent-Appellant. | ) ) | |
| | ) | |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bonneville County. Hon. Dane H. Watkins Jr., District Judge. Hon. Steven A. Gardner, Magistrate.

Order of the district court, on intermediate appeal, vacating and remanding the magistrate court's judgment dismissing petition for guardianship, <u>reversed</u>.

Hart Law Offices, PC; Stephen S. Hart, Idaho Falls, for appellant.

Smith, Woolf, Anderson & Wilkinson, PLLC; Zachary D. Lords, Idaho Falls, for respondents.

_____

TRIBE, Judge

Nicholas Ray Clegg appeals from the district court's order vacating and remanding the magistrate court's judgment dismissing Shonda and Matt Queens' (Queens) petition for guardianship. For the reasons stated below, we reverse the district court's order vacating and remanding the magistrate court's judgment dismissing the petition for guardianship; therefore, the magistrate court's dismissal of the petition for guardianship is affirmed.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Clegg and Hailey Corrine Queen (Hailey) conceived a child while married. At the time the child was born in June 2019, Clegg and Hailey were still married but lived separately. Hailey

1

petitioned for divorce and obtained a default judgment and a decree of divorce which awarded her sole legal and physical custody of the child. Clegg and Hailey engaged in communications regarding Clegg's visitation with the child. During these communications, Clegg moved to various locations in Idaho, Oregon, and Nevada. Clegg made child support payments and bought clothes and other items for the child. Clegg lived with Jessie (his new wife) and her children.

Hailey passed away in December 2021. After Hailey's death, the Queens (Hailey's parents) obtained a judgment for temporary guardianship and sought a petition for permanent guardianship of the child. Clegg contested the petition. Finding that Clegg had not abandoned the child and that Clegg could provide a stable home for the child, the magistrate court entered a judgment denying and dismissing the Queens' petition for guardianship. The Queens appealed to the district court. The district court held that the magistrate court failed to make sufficient findings as to Clegg's efforts in maintaining a normal parental relationship with the child. The district court also found that certain factual findings by the magistrate court were not supported by substantial and competent evidence. The district court vacated the magistrate court's judgment and remanded the case to the magistrate court to make additional findings. Clegg appeals.

## II.

## STANDARD OF REVIEW

For an appeal from the district court, sitting in its appellate capacity over a case from the magistrate court, we review the record to determine whether there is substantial and competent evidence to support the magistrate court's findings of fact and whether the magistrate court's conclusions of law follow from those findings. *Pelayo v. Pelayo*, 154 Idaho 855, 858-59, 303 P.3d 214, 217-18 (2013). However, as a matter of appellate procedure, our disposition of the appeal will affirm or reverse the decision of the district court. *Id*. Thus, we review the magistrate court's findings and conclusions, whether the district court affirmed or reversed the magistrate court and the basis therefor, and either affirm or reverse the district court.

## III.

## ANALYSIS

### A. Magistrate Court's Findings

Clegg argues that the district court erred in holding that three of the magistrate court's findings of fact were not supported by substantial and competent evidence. The Queens argue that

the district court's order should be affirmed and that each of the magistrate court's findings of fact were supported by substantial and competent evidence. Where a trial court sits as a finder of fact without a jury the court is required to enter findings of fact and conclusions of law. Idaho Rule of Civil Procedure 52(a); *Est. of Hull v. Williams*, 126 Idaho 437, 440, 885 P.2d 1153, 1156 (Ct. App. 1994). Our review of the trial court's decision is limited to ascertaining whether substantial, competent evidence supports the findings of fact, and whether the trial court correctly applied the law to the facts as found. *Borah v. McCandless*, 147 Idaho 73, 77, 205 P.3d 1209, 1213 (2009); *Cummings v. Cummings*, 115 Idaho 186, 188, 765 P.2d 697, 699 (Ct. App. 1988). Thus, we defer to findings of fact that are not clearly erroneous, but we freely review the trial court's conclusions of law reached by applying the facts found to the applicable law. *Staggie v. Idaho Falls Consol. Hosps.*, 110 Idaho 349, 351, 715 P.2d 1019, 1021 (Ct. App. 1986). Where there is conflicting evidence, it is the trial court's task to evaluate the credibility of witnesses and to weigh the evidence presented. *Desfosses v. Desfosses*, 120 Idaho 354, 357, 815 P.2d 1094, 1097 (Ct. App. 1991). We will not set aside the trial court's factual findings as clearly erroneous if they are supported by substantial and competent, even if conflicting, evidence. *Kennedy v. Schneider*, 151 Idaho 440, 442, 259 P.3d 586, 588 (2011). Evidence is substantial and competent if a reasonable trier of fact would accept that evidence and rely on it to determine whether a disputed point of fact was proven. *Hull v. Giesler*, 156 Idaho 765, 772, 331 P.3d 507, 514 (2014); *Hutchison v. Anderson*, 130 Idaho 936, 940, 950 P.2d 1275, 1279 (Ct. App. 1997).

### 1.    Finding 11

The district court held that finding 11 of the magistrate court's order was not supported by substantial and competent evidence. Finding 11 states, "In September of 2021 [Clegg] and Jessie were married and moved to Vale, Oregon, but [Clegg] continued to make plans to begin visitation with the minor child." The district court held that there was not substantial and competent evidence that Clegg attempted to make plans for visitation in the time between moving to Oregon and Hailey's death. Clegg argues that a message he sent in response to a message from Hailey showed the potential to move to Idaho Falls for the purpose of visitation. The message reads:

> [Hailey:]    Were u interested in meeting your son at any point. U said u were going to around Christmas then blocked me instead[.]
> [Clegg:]    Yes. I'm in the process of moving into a house so as soon as things are settled we can set something up.

The Queens argue that, when the message from Clegg is read in context with the preceding message from Hailey, it shows Clegg was simply trying to appease Hailey rather than manifesting actual intent to see the child. The messages were exchanged in March 2021 and are therefore not dispositive as to whether Clegg continued planning to visit the child during or after September 2021.

Clegg also references an affidavit in which he states, "In October 2021, we finally found a four-bedroom house in Vale, Oregon, and moved our family there. Jessie and I began talking about starting to make plans to see [the child]." On appeal, the Queens argue that "making plans" is an "affirmative act" while Clegg was actually "making plans, to make plans someday, to see [the child]" with no "real intent to actually follow through." The Queens' semantical argument misconstrues the meaning of Clegg's statement. Despite Clegg's phrasing, the magistrate court properly concluded that Clegg was making plans to visit the child, not just talking about making plans.

The Queens argue that Clegg "admitted that he never made any attempt whatsoever to set up any contact." At trial, in reference to his message sent to Hailey in March 2021, Clegg confirmed that he never saw the child and that Hailey never denied a request to see the child. Clegg also acknowledged that he refused to Skype with the child or see a counselor. Clegg further agreed with the statement that, "as long as the terms and conditions were what [he] wanted, then [he] would have visitation." While indicative of a refusal to compromise, that Clegg had not seen the child and that Hailey never denied a request for Clegg to see the child, it does not mean that Clegg did not attempt to see the child or that such attempts were frustrated by Hailey.

Finally, Clegg argues that, because this testimony was uncontested, it was in the magistrate court's discretion to infer that he was making plans to see the child after he was married and moved to Oregon. "Substantial and competent evidence is relevant evidence which a reasonable mind might accept to support a conclusion." *Kelly v. Wagner*, 161 Idaho 906, 910, 393 P.3d 566, 570 (2017). Because the trial court is most appropriately situated to weigh conflicting evidence and judge the credibility of witnesses, "[t]his Court will 'liberally construe the trial court's findings of fact in favor of the judgment entered.'" *Id*. (quoting *Oregon Mut. Ins. Co. v. Farm Bureau Mut. Ins. Co. of Idaho*, 148 Idaho 47, 50, 218 P.3d 391, 394 (2009)). This Court will not reweigh the evidence or consider the credibility of witnesses. *Pimley v. Best Values, Inc.*, 132 Idaho 432, 435,

974 P.2d 78, 81 (1999). The magistrate court could have relied on the affidavit and the Facebook message from Clegg to support the finding that, after Clegg moved to Vale, Oregon, he continued to "make plans to begin visitation" with the child.

Therefore, Clegg has met his burden of showing that the magistrate court did not clearly err in finding number 11 as this finding is supported by substantial and competent evidence. The district court erred in determining that the magistrate court's finding was unsupported.

### 2. Finding 16

Clegg argues that the district court erred by holding that finding 16 of the magistrate court's order was not supported by substantial and competent evidence. Finding 16 states:

> Between the birth of the minor child and Hailey's death, Hailey controlled the contact and relationship [Clegg] was attempting to establish with the minor child. She frequently went between "yes, come and see him" to "give up your rights[."] It was always [Clegg's] desire to try to work things out informally with Hailey to begin visitation, rather than resort to litigation.

Clegg argues that finding 16 was supported by substantial and competent evidence that Hailey controlled the contact and relationship he was attempting to establish with the child. Clegg further argues that the district court's conclusion was based on alleged instances where he contradicted himself in terms of his testimony about Hailey's control; but, even with the alleged contradictions, it was still reasonable for the magistrate court to find that Clegg did not intend to abandon the child.

Due to the varying content in finding 16, it is best reviewed in sections. First, the district court held that the magistrate court did not have substantial and competent evidence to find that Hailey "controlled" the contact and the relationship that Clegg was attempting to establish with the child because Clegg made a "generalized assertion" of his intent to meet the child. Further, the district court noted that the period of time when Hailey exercised control over Clegg's visitation through influence or power only lasted up until September 23, 2019--not up until her death in December 2021. At trial, Clegg testified that he continued to try to get visitation and Hailey continued to deny contact up until her death. Also, Clegg testified that the messages would show a pattern of Hailey denying visitation. However, the messages showed only an intent by Clegg to visit the child in 2021 without any denial from Hailey. Additionally, at trial, Clegg agreed that the only time Hailey discussed him forfeiting his parental rights was in September 2019. The

magistrate court did not find any indication that Clegg sought visitation and was denied by Hailey, nor was there any evidence suggesting that Hailey told Clegg he was not allowed to come to her home to visit the child. The district court explained that "the only evidence that Hailey attempted to control or circumvent [Clegg] from contacting or visiting [the child] subsequent to September 23, 2019, is [Clegg's] vague testimony that he continued his efforts to obtain visitation up until Hailey's death." The district court concluded by outlining instances where Clegg contradicted himself in terms of his testimony about Hailey's control. Clegg argues that, even if the district court is correct about the contradictions, "e.g., even if the evidence was more nuanced than what the Magistrate said, it does not mean the finding should be remanded." For example, Clegg argues it was not disputed that, for a time following the birth of the child, Hailey was pressuring Clegg to give up his parental rights.

At both levels of this appeal, much of the discussion has focused on whether Clegg was actually denied visitation or, as the district court held, that the only evidence that Hailey attempted to control or circumvent Clegg from contacting or visiting the child subsequent to September 23, 2019, was Clegg's vague testimony that he continued efforts to obtain visitation up until Hailey's death. However, this portion of the finding simply focuses on whether Hailey controlled the contact and relationship Clegg was attempting to establish with the child. Hailey may not have prevented Clegg from seeing the child; however, substantial and competent evidence exists that Hailey did control how Clegg could visit the child, especially during the first year of the child's life based on her communication to Clegg that "for the first year until I can trust you I would prefer visitation rather than having him leave my home." Therefore, the district court incorrectly held that the magistrate court did not have substantial and competent evidence to find that Hailey controlled Clegg's attempts at contact and a relationship with the child.

Next, there is substantial and competent evidence to show that Hailey "frequently" changed her stance from inviting Clegg to visit the child and asking him to give up his rights. The only evidence of conversations between Hailey and Clegg regarding the child is Facebook messages and Clegg's testimony. The messages show an ongoing discussion regarding custody between Clegg and Hailey. On September 18, 2019, Hailey sent a Facebook message to Clegg that reads: "If you're willing to sign over rights," to which Clegg responded, "No." On September 23, 2019, Hailey sent a Facebook message to Clegg that reads: "Physical I might be willing to sign to legal

6

and medical no" and another Facebook message stating, "if you want 50/50 legal 75/25 physical sure." Also, on that same day, Hailey sent a Facebook message reading, "never said I want you to give up your rights I want [the child] to have his father in his life." In reference to an appointment where the two were set to discuss visitation, Hailey sent a Facebook message stating: "Then come to the appointment and we will figure something out" and Clegg responded, "No figuring. That's it. If you don't agree, then don't agree and we can go a different route."

In 2020, the messages that are sent between Hailey and Clegg are mainly regarding the child's health and doctor's appointments. There is no demand in 2020 for Clegg to give up his rights. Then in 2021, the messages consist of Hailey asking Clegg if he is going to meet the child and Clegg telling Hailey that he has paid child support. The messages in 2021 do not show a back and forth from Hailey "frequently" asking Clegg to give up his rights and to come see the child. However, Clegg testified that, when he tried to communicate with Hailey about seeing the child, Hailey frequently changed her mind and that it was "[p]retty much hit-and-miss. One day it was, 'Yeah, you can come and see him.' The next day it would be, 'Give up your rights.'" Clegg testified that, after a health scare with the child, he again sought visitation but was met "with the same arguments we got before." He clarified that those "same arguments" were to give up his rights to the child. Clegg further testified that he continued to make efforts with Hailey to have visitation with his child up until the time Hailey passed away, which were unsuccessful. As stated above, this Court will not set aside the trial court's factual findings as clearly erroneous if they are supported by substantial and competent, even if conflicting, evidence. Therefore, the district court erred in determining that substantial and competent evidence did not support the magistrate court's finding.

The district court also held that the magistrate court did not have substantial and competent evidence to find that Clegg always desired to work things out informally rather than resort to litigation. The district court noted at least four statements from Facebook communications between Hailey and Clegg where he mentions getting a lawyer and using the court system to establish physical and legal custody of the child. During a discussion about custody on September 23, 2019, Clegg sent a Facebook message to Hailey stating: "Unless you have a court order that says otherwise, I am not doing supervised visitation." On that same day, Clegg also responds to Hailey's proposed custody arrangement stating: "Nope. I will fight it 100%," and

another Facebook message that states, "I will fight for 50/50 legal and 75/25 physical. And I can bring witnesses to the court to prove that I can take care of special needs kids." Also, on that same day, Clegg sends Facebook messages to Hailey that state: "I will get a lawyer if I have to. I know my rights as a father," and "I will fight tooth and nail to have joint custody." Finally, Clegg sends a Facebook message to Hailey that states: "I will also go to the court to get an interim order to see our son."

The fact that Clegg expressed a willingness to resort to litigation does not mean that Clegg did not desire to informally work on visitation with Hailey. Indeed, Clegg never pursued legal action to enforce his rights when Hailey was alive. It is clear that the district court focused on the term, "always," from the magistrate court's findings and not Clegg's course of conduct or his testimony. Even if the district court was correct that there were contradictions, it does not require a remand on that portion of the finding. Therefore, the district court incorrectly held that the magistrate court did not have substantial and competent evidence in finding that it was "always [Clegg's] desire to try to work things out informally with Hailey to begin visitation, rather than resort to litigation."

### 3.    Finding 20

Clegg also argues that the district court erred in holding that finding 20 of the magistrate court's order was not supported by substantial and competent evidence. Finding 20 states:

> The court is appreciative of the research, report and opinion of the guardian ad litem. However, the court comes to a different conclusion, as stated below. Although there has been no contact between the minor child and [Clegg], such is excused, at least in part, by actions, however motivated, by Hailey, and also partly by the filing of this action.

The district court stated that a reasonable fact finder could not conclude that Clegg's failure to contact the child was excused by Hailey's interference. The district court also stated that there is not substantial and competent evidence to demonstrate that Hailey interfered with Clegg's ability to visit the child. Clegg argues that the district court should have upheld finding 20 because the magistrate court did not find exclusively in his favor as the magistrate court stated that his lack of contact was excused "at least in part."

Finding 20 is more akin to a legal conclusion than a factual finding. The magistrate court's statement that Clegg's actions are "excused, at least in part, by actions, however motivated, by

Hailey" is a legal conclusion that Clegg's potential abandonment of the child was excused for just cause due to Hailey's actions. Therefore, the district court erred in reviewing this legal conclusion for lack of substantial and competent evidence. On appeal, this Court is free "to determine whether the law was properly construed and applied." *Hopper v. Hopper*, 144 Idaho 624, 626, 167 P.3d 761, 763 (2007). The magistrate court's legal conclusion will be discussed below.

### 4. Care and custody

Clegg argues that the district court failed to provide clear instructions to the magistrate court regarding the placement of the child and the future guardianship of the child. Further, Clegg cites to *In re Guardianship of Copenhaver*, 124 Idaho 888, 892, 865 P.2d 979, 983 (1993), and argues that the Idaho Supreme Court has held that the trial court should not engage in the best interests of the child analysis for guardianship between a nonparent and a parent "unless the nonparent demonstrates either that the natural parent has abandoned the child, that the natural parent is unfit or that the child has been in the nonparent's custody for an appreciable period of time." Clegg argues that there is sufficient evidence to show he did not abandon the child and, as the child's natural parent, he--not the Queens--is entitled to be awarded physical custody.[1]

This Court will not review issues not presented in the statement of issues. *See State v. Crowe*, 131 Idaho 109, 111, 952 P.2d 1245, 1247 (1998). Thus, this argument fails as a matter of procedure. Further, the only argument made in this section is that, when there was substantial and competent evidence of non-abandonment, the child should not be removed from Clegg. A discussion of abandonment is included below.

### B. Abandonment

Clegg argues that the district court erred in finding that the magistrate court did not properly analyze the issue of abandonment. Specifically, Clegg argues that the district court erred in deciding the magistrate court "failed to make sufficient findings of facts to support its conclusion [Clegg] had not abandoned [the child]" for purposes of the Queens' guardianship petition.

---

[1] Clegg also cites to the Idaho Parental Rights Act, Idaho Code §§ 32-1010, 32-1013. However, this citation does not advance his position. "As the plain language of both sections 32-1010 and 32-1013 sets forth, the Act's prohibitions only relate to government conduct. There is no language in the Act that makes it applicable to the actions of private persons." *Murray v. Dalton*, 174 Idaho 593, 600, 558 P.3d 1057, 1064 (2024) (internal citation omitted).

9

Guardianship proceedings in Idaho are governed by statute. *In re Doe*, 148 Idaho 432, 439, 224 P.3d 499, 506 (2009). A person can become a guardian of a minor in one of two ways under I.C. § 15-5-201, either by "acceptance of a testamentary appointment" or "upon appointment by the court." *Doe v. Doe*, 150 Idaho 432, 434, 247 P.3d 659, 661 (2011). Idaho Code § 15-5-204 governs the standard for court appointment of a guardian of a minor. It provides that a "court may appoint a guardian for an unmarried minor if all parental rights of custody have been terminated by prior court order or upon a finding that the child has been neglected, abused, or abandoned or whose parents are unable to provide a stable home environment." I.C. § 15-5-204(1).

"Abandoned" as it relates to guardianship, is defined as:

[T]he failure of the parent to maintain a normal parental relationship with the child including, but not limited to, reasonable support or regular contact. Failure to maintain a normal parental relationship with the child without just cause for a period of six (6) months shall constitute prima facie evidence of abandonment.

*Id*. In this case, as it pertains to abandonment or whether Clegg is unable to provide a stable home for the child, the magistrate court wrote:

The court answers these questions both in the negative, as shown by the *Findings of Fact*, above. [Clegg] has not abandoned the minor child, but has attempted, as circumstances have allowed to have contact with and provide some support for the minor child and be a part of [the child's] life.

On intermediate appeal, the Queens argued that the magistrate court made insufficient findings on whether Clegg maintained a normal parental relationship with the child by offering reasonable support and maintaining regular contact.

The district court ruled that the magistrate court's conclusion that Clegg made child support payments up until 2021 (with no findings as to whether that was reasonable), along with the magistrate court's finding that Clegg had no contact with the child, resulted in error in the magistrate court's order that Clegg had not abandoned the child. The district court stated that the lack of findings on whether support was reasonable and the finding that Clegg had no contact with the child would lead to the conclusion that Clegg did not have a normal parental relationship with the child. The district court reviewed, as a finding of just cause for abandonment, the magistrate court's findings that Clegg "attempted, as circumstances have allowed to have contact with and provide some support for the minor child and be a part of his life" and that Clegg's lack of contact was "excused, at least in part" due to Hailey's actions. The district court concluded that, to the

10

extent those findings were intended to establish just cause, they were unsupported by substantial and competent evidence.

Clegg argues that "the evidence was such that the decision could have gone either way" and therefore the district court should have deferred to the magistrate court's findings of fact and conclusions of law of non-abandonment. We will not set aside the trial court's factual findings as clearly erroneous if they are supported by substantial and competent, even if conflicting, evidence. *Kennedy v. Schneider*, 151 Idaho 440, 442, 259 P.3d 586, 588 (2011). We disagree with the district court that the magistrate court failed to make sufficient factual findings to support its conclusion that Clegg did not abandon the child and that any abandonment was for just cause. Clegg claims that the Idaho Supreme Court's interpretation of a normal parental relationship is applicable here. *See In re Doe*, 156 Idaho 532, 537, 328 P.3d 512, 517 (2014). A normal parental relationship is to be determined by the court considering the unique circumstances of each case including any financial or logistical difficulties faced maintaining that relationship. *See id.* Based on the unique circumstances of this case, and the standard of review, the magistrate court made sufficient factual findings to support its conclusion that Clegg did not abandon the child. The magistrate court's ruling, that Clegg has attempted (as circumstances have allowed) to have contact with and provide some support for the child and be a part of the child's life, is supported by substantial and competent evidence. Clegg never agreed to give up his parental rights to the child; during 2021, Clegg made regular child support payments; in September 2021, Clegg and Jessie were married and moved to Vale, Oregon, but Clegg continued to make plans to begin visitation with the child; and between the birth of the child and Hailey's death, Hailey controlled the contact and relationship Clegg was attempting to establish with the child. There is nothing in the record to show that Clegg intended to abandon the child during any given period. It was reasonable for the magistrate court to infer that Clegg "always" intended to have visitation and that his desire continued until the time of Hailey's death. Whether he intended to do so "informally" at all times (or just some of the time) is immaterial as the relevant statute (I.C. § 15-5-204) does not define abandonment in terms of the type of measures used (whether formal or informal) to establish visitation.

The magistrate court made sufficient factual findings as to whether the physical absence of Clegg from the child's life showed a lack of a normal parental relationship and, if so, whether there was just cause. We disagree with the district court that the magistrate court failed to properly

11

consider the issue of abandonment.  Clegg's lack of regular visitation during the first two years of the child's life was not ideal but that does not mean it rises to the level of abandonment.  Clegg continued to pay child support for the child, continued to tell Hailey that he wished to have visitation, and was actively planning with Jessie to accomplish that end.  Clegg testified that much of the problem with attempting to physically be with the child was a lack of finances.  The issue of abandonment was disputed by the parties and the fact that the magistrate court made a close call does not mean substantial and competent evidence did not support its conclusion.  Therefore, the district court's decision is reversed and the dismissal of the petition for guardianship is affirmed.

C.      **Attorney Fees and Costs**

An award of attorney fees may be granted under I.C. § 12-121 and I.A.R. 41 to the prevailing party and such an award is appropriate when the court finds that the appeal has been brought or defended frivolously, unreasonably, or without foundation.  Both parties argue that, upon prevailing, they shall be awarded attorney fees pursuant to I.C. § 12-121.  We do not find that the appeal has been brought or defended frivolously, unreasonably, or without foundation; therefore, attorney fees are not awarded to either party.  Clegg is the prevailing party and is entitled to costs on appeal pursuant to I.A.R. 40.

**IV.**

**CONCLUSION**

For the reasons set forth above, we reverse the district court's order, on intermediate appeal, vacating and remanding the magistrate court's judgment dismissing petition for guardianship.  The magistrate court's dismissal of the petition for guardianship is therefore affirmed.  Costs are awarded to Clegg on appeal.

Chief Judge GRATTON and Judge LORELLO, **CONCUR**.

12